P.L., Appellant,

v.

**Lynn AUBERT, Daniel Brooks, Independent School District # 306, Respondents.**

No. C2–94–1502.

Court of Appeals of Minnesota.

Feb. 7, 1995.

Review Granted April 27, 1995.

Katherine S. Flom, Meshbesher & Spence, Ltd., Minneapolis, for appellant.

Frank F. Munshower, Jr., Steven R. Young, Drahos and Young, Bemidji, for Lynn Aubert.

Krister D. Johnson, Michael T. Milligan, Quinlivan, Sherwood, Spellacy, and Tarvestad, P.A., St. Cloud, for Daniel Brooks, Independent School District # 306.

Considered and decided by KLAPHAKE, P.J., LANSING and AMUNDSON, JJ.

## OPINION

AMUNDSON, Judge.

Appellant, a high school student, was sexually abused by a teacher. Appellant sued the teacher, the school district, and the school's principal. The district court granted summary judgment for the school district and the principal after determining that they could not be held liable for the teacher's actions. We affirm in part, reverse in part and remand.

## FACTS

At the time of the sexual abuse, appellant P.L. was a 16–year–old eleventh grade student at Laporte High School. Respondent Lynn Aubert was a 42–year–old first year teacher at the school which is in the respondent Independent School District # 306. Respondent Daniel Brooks was the high school principal and superintendent of the school district.

Aubert was P.L.'s instructor for three classes: clerical, business math, and accounting. Around September or October of 1989, Aubert began talking about personal and inappropriate topics during class. She also talked to P.L. about his family problems, his parents' divorce, and his problem with alcohol. Around November or December of 1989, Aubert began to kiss P.L.

In December 1989, Aubert had a Christmas party at her house. During the party, Aubert spent some time slow dancing with P.L. and rested her hand upon his buttocks. Additional intimate contact soon occurred. In the accounting class, there was only one student other than P.L. When this other student was gone, due to a job outside of class, most of the sexual contact occurred. Aubert would lock the door and Aubert and P.L. would kiss, hug, and touch each other's genitals, both over and under their clothes. In addition, during business math, while other students were present, Aubert would have P.L. sit at her desk and then sexually touch him.

The sexual abuse is substantiated by a number of letters Aubert wrote to P.L. In the letters, Aubert discusses how and when she and P.L. should get together for sexual intercourse, although intercourse never actually happened. The sexual contact terminated around May of 1990 at P.L.'s request.

P.L. commenced this action on December 2, 1992. He alleged claims for battery, intentional infliction of emotional distress, negligence (negligent infliction of emotional distress, negligent hiring, and negligent supervision), sexual harassment, breach of fiduciary duty, and vicarious liability. Aubert, the school district and Brooks moved for summary judgment. The school district and Brooks claimed that they had no knowledge nor any reason to know of Aubert's actions, therefore, they were not liable. The district court agreed, and by order dated March 9, 1994, granted summary judgment for the school district and Brooks on all the counts in the complaint thereby dismissing them from the action. The court denied Aubert's summary judgment motion. Judgment was entered on March 11, 1994.

P.L. brought a motion for reconsideration on May 13, 1994 which was joined by Aubert. On June 17, 1994, the district court denied the motion. Upon finding that there was "no just reason for delay," the court also ordered the entry of final judgment for the school district and Brooks. This appeal followed.

## ISSUES

1. Did the district court err in determining that the school district cannot be held vicariously liable for the intentional acts committed by the teacher against the student?

2. Did the district court err in determining that the school district cannot be held vicariously liable for the negligent acts committed by the teacher against the student?

3. Did the district court err in determining that the school district cannot be held vicariously liable for the teacher's sexual harassment of the student?

4. Did the district court err in determining that the school district cannot be held liable for negligent hiring of the teacher?

5. Did the district court err in determining that the school district cannot be held liable for negligent supervision of the teacher?

## ANALYSIS

On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no material issues of fact exist and one

party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03.

The evidence must be viewed in a light most favorable to the party against whom judgment was granted, *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). The party opposing a summary judgment motion, however, cannot rely upon mere general statements of fact, but rather must demonstrate that specific facts are in existence which create a genuine issue for trial. *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn.1986).

## I. Intentional Acts

For summary judgment purposes, we assume that P.L. may maintain claims for battery and intentional infliction of emotional distress against Aubert. The question then is, if such claims are proven against Aubert, can the school district and Brooks (hereinafter referred to collectively as the school district) be held vicariously liable.

To determine whether the school district can be held vicariously liable, we apply the principles established by the supreme court in *Marston v. Minneapolis Clinic of Psychiatry*, 329 N.W.2d 306 (Minn.1983). In *Marston*, a psychologist engaged in sexual contact with patients during therapy sessions. The court noted that under prior law, liability was imposed on an employer only where it was " 'shown that the employee's acts were motivated by a desire to further the employer's business.' " *Id.* at 309 (quoting *Lange v. National Biscuit Co.*, 297 Minn. 399, 401, 211 N.W.2d 783, 784 (1973)). In *Lange*, a cookie salesman assaulted a grocery store owner. The supreme court abandoned the motivation test and adopted the rule that

> an employer is liable for an assault by his employee when the source of the attack is related to the duties of the employee and * * * occurs within work related limits of time and place.

*Lange*, 297 N.W.2d at 405, 211 N.W.2d at 786. Applying the *Lange* decision, the *Marston* court concluded that:

> For an intentional tort, the focus is on whether the assault rises out of a dispute occurring within the scope of employment. It is irrelevant whether the actual assault involves a motivation to serve the master.

329 N.W.2d at 310.

Although the psychologist's sexual overtures to his patients in *Marston* could not really be characterized as assaults in the same way that the cookie salesman in *Lange* assaulted the store owner, the psychologist did act intentionally and his improper actions in a professional setting could have exacerbated the patients' mental and emotional problems. *Id.* at 310–311. In such a case, the court stated

> a jury might find that the employee's conduct is so related to the employment that the employer may be vicariously liable. To require that the employee who intentionally acts in his own personal interests in this factual setting must also have the intention to be acting in furtherance of his employer's interests unfairly distorts, as *Lange* would put it, the focus on how the employment relates to the incident.

*Id.* at 311. Thus, an employee's motivation should not be a consideration for imposition of vicarious liability. *Id.*

In the present case, we also apply the *Lange* rule in determining whether the school district can be held vicariously liable for Aubert's acts. Accordingly, we apply a two-prong test in determining if Aubert's sexual abuse was within the scope of employment: first, whether the abuse is related to Aubert's duties; and second, whether the abuse occurred within the work related limits of time and place.

In the present case, there is no question that Aubert's sexual abuse of P.L. occurred "within the work related limits of time and place." The sexual abuse occurred primarily in the classroom during regular school hours and while class was in session. Therefore, our focus is on the first prong, i.e. whether the abuse is related to Aubert's duties.

In analyzing this question, the *Marston* decision again guides our decision. The court in *Marston* held that the psychologist's acts were not "necessarily" outside the scope of employment; rather, whether the psychol-

ogist's acts were within the scope of employment was a "question of fact." *Id.* The court stated:

> There was testimony that sexual relations between a psychologist and a patient is a well-known hazard and thus, to a degree, *foreseeable* and a risk of employment. In addition, the instant situation would not have occurred but for [the psychologist's] employment; it was only through his relation to plaintiffs as a therapist that [the psychologist] was able to commit the acts in question.

*Id.* (Emphasis added.)

Thus, the question is one of foreseeability, i.e. whether Aubert's sexual abuse of P.L. was foreseeable. Under the facts of this case, we cannot hold as a matter of law, that Aubert's sexual abuse of P.L. was not foreseeable. Because of Aubert's position as a teacher, she was able to exert influence and control over the P.L. who was particularly susceptible to being manipulated. Additionally, the unique classroom situation in which P.L. was the only student, made the sexual abuse more likely as Aubert had frequent private access to P.L. The abuse would not have occurred but for Aubert's position as a teacher. Thus, the harm directly flowed from the exercise of Aubert's authority over P.L.

The record also demonstrates that the school district and school officials were aware of incidents involving sexual contact between other teachers and students. Therefore, the school district cannot claim that it lacked knowledge concerning the potential for sexual abuse of students by teachers. In any event, the unfortunate reality is that sexual abuse of students by teachers has become a well-known hazard. Aubert's conduct is not so unusual or startling that it would seem unfair to include the resulting loss from among other costs associated with operating the school district.

Thus, we hold that there are fact questions whether Aubert's acts were foreseeable, related to, and connected with acts otherwise within the scope of employment. *See id.* at 311. Accordingly, we reverse the grant of summary judgment for the school district as to the intentional acts (battery and intention-

al infliction of emotional distress) alleged in P.L.'s complaint.

## II. *Negligent Acts*

■ P.L. seeks to hold the school district vicariously liable if he proves his claims for negligent infliction of emotional distress and breach of fiduciary duty against Aubert.

■ In *Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d 11, 17 (Minn.1979), the supreme court held there was sufficient evidence to support a jury verdict that an employee was acting within the scope of employment when he negligently caused a fire at the plaintiff's hotel. The court stated that to establish that an employee's negligent act was within the scope of employment, "it must be shown that his conduct was, to some degree, in furtherance of the interests of his employer." *Id.* at 15.

The *Marston* court found no conflict between the *Lange* and *Gatzke* decisions, noting that *Lange* deals with an intentional tort while *Gatzke* deals with negligence. *Marston,* 329 N.W.2d at 310. The court stated:

> [W]hen the claim lies in negligence, the relevant duty of care is determined by employment status. Consequently, the requirement that the employee act, at least in part, in furtherance of his employer's interests requires both the existence of the duty and its exercise.

*Id.*

Viewing the facts in a light most favorable to P.L., there is no basis for finding that Aubert was acting in furtherance of the school district's interests. Thus, even if Aubert's sexual abuse was foreseeable, the school district cannot be held liable for Aubert's negligent acts. Accordingly, we affirm the grant of summary judgment for the school district as to P.L.'s claims for negligent infliction of emotional distress and breach of fiduciary duty.

## III. *Sexual Harassment*

The Minnesota Human Rights Act prohibits sex discrimination in education. Minn. Stat. § 363.03, subd. 5(1) (1990). The term

"discriminate" includes sexual harassment. Minn.Stat. § 363.01, subd. 14 (1990).

To establish a prima facie case of sexual harassment against an employer, the plaintiff must establish that the employer "knew or should have known" of the harassment. *Fore v. Health Dimensions, Inc.*, 509 N.W.2d 557, 560 (Minn.App.1993). Although there is no allegation that the school district had direct knowledge of the alleged sexual harassment, P.L. argues that the knowledge should be imputed to the school district.

There is no bright line rule on imputation in sexual harassment cases. *Weaver v. Minnesota Valley Labs., Inc.*, 470 N.W.2d 131, 134–35 (Minn.App.1991) (refusing to impute knowledge of sexual harassment where employer had sexual harassment policy in place). Thus, the issue of imputed notice must be determined on a case-by-case basis. *Id.* at 135.

In this case, there may be a fact issue whether the school district should have known of Aubert's harassment. Nevertheless, even if the school district should have known of the harassment, the school district can avoid liability for the harassment if it took timely and appropriate remedial action. *See Continental Can Co. v. State*, 297 N.W.2d 241, 249 (Minn.1980) (Human Rights Act imposes a duty on the employer to take "prompt and appropriate action" when it knows or should know of an employee's sexual harassment in the work place); *See, e.g.*, *McNabb v. Cub Foods*, 352 N.W.2d 378, 383 (Minn.1984) (knowledge imputed to the employer where sexual harassment committed by a supervisor); *McNabb*, 352 N.W.2d at 384 ("An employer must act to prevent and correct harassment when it becomes aware of the problem").

P.L. does not allege, and the evidence does not show, that the school district failed to take timely and appropriate action upon learning of the sexual harassment. Therefore, the school district cannot be held liable for Aubert's alleged sexual harassment. Accordingly, the court properly granted the school district summary judgment on P.L.'s sexual harassment claim.[1]

## IV. *Negligent Hiring*

Minnesota recognized a cause of action based on negligent hiring in *Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907 (Minn.1983). In *Ponticas*, the supreme court affirmed a jury's verdict that an apartment complex violated its duty to exercise reasonable care in hiring a resident manager. The court stated that an employer has the

> duty to exercise reasonable care * * * in hiring individuals who, because of the employment, may pose a threat of injury to members of the public.

*Id.* at 911.

This theory of recovery imposes liability for an employee's intentional torts when the employer "knew or should have known that the employee was violent or aggressive and might engage in injurious conduct." *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 422 (Minn.App.1993), *pet. for rev. denied* (Minn. Apr. 20, 1993). The scope of an employer's duty of reasonable care in hiring is largely dependent on the "type of responsibilities associated with the particular job." *Id.*

In this case, the parties do not dispute that the school district owed P.L. a duty to use reasonable care in hiring Aubert. Therefore, the only question is whether the school district breached that duty.

P.L. has failed to set forth any evidence that the school district was negligent in hiring Aubert. When Aubert was hired, it was her first teaching position. There is no dispute that she possessed a valid Minnesota teaching license, had good academic creden-

---

1. Because we are affirming the grant of summary judgment on the sexual harassment claim, we need not address the merits of the school district's argument that all claims involving sexual harassment must be dismissed because they are barred by the statute of limitations. Nevertheless, we note that the school district did not file a notice of review challenging this determination on appeal. Therefore, the school district is precluded from making this argument on appeal. *See* Minn.R.Civ.App.P. 106 (respondent may obtain review of judgment or order by filing a notice of review); *Smoliak v. Myhr*, 361 N.W.2d 153, 157 (Minn.App.1985) (to obtain review of an additional issue, a respondent "must" file a notice of review).

tials, and had excellent references. Thus, there are no fact issues to be resolved by a jury concerning Aubert's hiring. Accordingly, the district court properly granted the school district summary judgment on P.L.'s negligent hiring claim.

## V. *Negligent Supervision*

■ A claim for negligent supervision derives from the respondeat superior doctrine, which relies on connection to the employer's premises or chattels. *Yunker*, 496 N.W.2d at 422. In the present case, the sexual contact took place on school premises, thus a claim for negligent supervision may be viable.

■ Before negligence can be found, it must be established that the person owed a duty to the injured person. *Zimmer v. Carlton County Co-op Power Ass'n*, 483 N.W.2d 511, 513 (Minn.App.1992), *pet. for rev. denied* (Minn. June 10, 1992). Whether one owes a legal duty to another is a question of law to be determined by the court. *Id.* School districts have a duty to use reasonable care to protect their students. *Fallin v. Maplewood–North St. Paul Dist. No. 622*, 362 N.W.2d 318, 321 (Minn.1985). Thus, the school district had a duty to

> use ordinary care and protect its students from injury * * * under circumstances where such conduct would reasonably have been *foreseen* and could have been prevented by the use of ordinary care.

*Sheehan v. St. Peter's Catholic Sch.*, 291 Minn. 1, 3, 188 N.W.2d 868, 870 (1971). Recovery is allowed if the jury can find from the evidence that the supervision probably would have prevented the injury. *Id.* at 5, 188 N.W.2d at 871.

■ P.L. asserts that the school district was negligent in supervising Aubert because it did not conduct the three teacher evaluations required by law. *See* Minn.Stat. § 125.12, subd. 3 (1990). P.L. also claims that the school district did not obtain Aubert's lesson plans to determine the progress of her classroom teaching. Due in part to these failures, P.L. alleges that Aubert was able to repeatedly lock her classroom door which was against school policy in order to engage in sexual contact.

If the sexual abuse was foreseeable, and could have been prevented by the use of ordinary care, then the school district had a duty to protect P.L. from the sexual abuse. Assuming such a duty existed, when the evidence is viewed in a light most favorable to P.L., it is a fact question for the jury whether the school district exercised ordinary care in supervising Aubert. Accordingly, we reverse the grant of summary judgment for the school district on P.L.'s negligent supervision claim.

## DECISION

The district court properly granted summary judgment for the school district and Brooks on P.L.'s claims for negligent infliction of emotional distress, breach of fiduciary duty, sexual harassment, and negligent hiring. Genuine issues of material fact remain for jury resolution, however, on P.L.'s claims for battery, intentional infliction of emotional distress, and negligent supervision. Therefore, we reverse the grant of summary judgment for the school district and Brooks on these claims and remand for trial.

**Affirmed in part, reversed in part and remanded.**