Sanda OSLIN and Mary Wiese, Appellants,

v.

STATE of Minnesota, et al., Respondents.

Nos. C1–95–1579, C8–95–1580.

Court of Appeals of Minnesota.

Jan. 30, 1996.

Review Denied April 1, 1996.

Linda A. Miller, St. Paul, for appellants.

Hubert H. Humphrey, III, Attorney General, Peter Ackerberg, Assistant Attorney General, St. Paul, for respondents.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and FORSBERG, JJ.*

## OPINION

CRIPPEN, Judge.

In this consolidated appeal, Sanda Oslin and Mary Wiese, former employees of the St. Peter Regional Treatment Center, appeal from summary judgments entered on their civil law claims against respondents, the State of Minnesota and its Department of Human Services, for battery, defamation, negligent supervision and retention, and negligent infliction of emotional distress, stemming from actions by two supervisory employees. We affirm.

## FACTS

Appellants were employed by the St. Peter Regional Treatment Center, a state institution owned and operated by respondent Department of Human Services. Appellant Oslin was a security counselor on the night shift, supervised by Gary Grimm. Appellant Wiese was a licensed practical nurse, supervised at times by Gary Grimm's wife, Linda Grimm.

In early January 1992, the center's night shift staff attended a Christmas party after work at a local saloon. At one point during the party, Gary Grimm motioned to appellant Wiese to come over, grabbed her, touched the sides of her breasts, stated "you are one hell of a woman," and kissed her on the lips. Wiese pushed him away and stated "this isn't right." The incident was witnessed by another employee.

Later in the evening, appellant Oslin and a coworker were standing with Gary Grimm next to Grimm's car. According to Oslin, Gary Grimm bent down, grabbed the inside of her leg, slid his hand up, and grasped her crotch area. Oslin pushed away and left the area.

Appellants asked the county attorney to charge Gary Grimm with criminal assault. Probable cause was shown, and Grimm, while maintaining his innocence, pleaded guilty to two counts of disorderly conduct.

The evidence indicated that during the Christmas party, someone used Oslin's camera to take a picture of Linda Grimm passed out on a toilet. After the party, Oslin developed the pictures, brought them to work, and passed them around. Gary Grimm questioned Oslin during work about the picture of his wife, informed Oslin that his wife was discussing a lawsuit against her, and stated that if Oslin went home immediately to get the pictures and negatives, he would talk his wife out of the lawsuit. Oslin complied with Gary Grimm's request.

Appellants presented evidence of earlier inappropriate behavior by Gary Grimm and his wife. In April 1985, the Department of Human Rights found probable cause to believe that Gary Grimm had retaliated against another employee, Sandra Manser, after she had filed a charge of sex discrimination. Manser sued Gary Grimm in federal court for sexual harassment and retaliation, and she and Gary Grimm reached a settlement in April 1987. The center did not discipline Gary Grimm for the alleged retaliation against Manser and subsequently gave him

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

an above-average performance review and an exceptional performance award.

In March 1988, an employee under Gary Grimm's supervision filed a grievance, claiming that Grimm had unfairly removed her from her original work assignment. In January 1990, Gary Grimm's supervisor reported to Grimm that another employee under his supervision, Julie Zielie, had complained that Grimm had intimidated her and had blocked her from leaving a room at the center. In November 1990, Julie Zielie informed Gary Grimm that she was afraid to work with a certain male coworker. Nonetheless, Grimm continued to assign Zielie to work with the coworker. Zielie reported the problem to the center's affirmative action officer and also reported that Oslin had experienced a similar problem with Gary Grimm.

In December 1990, at another Christmas party for center employees, Gary and Linda Grimm became intoxicated. Linda behaved sexually with a coworker, and Gary appeared angry and jealous. In 1991, Linda Grimm approached Oslin in a bar and made sexual comments and advances towards her. Gary Grimm witnessed part of his wife's conduct, and according to Oslin, he later retaliated against Oslin at work.

In February 1992, Oslin and Wiese reported Gary Grimm's conduct during the January 1992 Christmas party to their union steward. The union steward recommended to center management that Gary Grimm be removed from the night shift for the comfort and safety of Wiese and Oslin. Gary Grimm's supervisor met with him to discuss the incidents and his drinking habits. There was evidence in the record that many employees had smelled alcohol on Gary Grimm's breath at work and that on more than one occasion Gary Grimm had reported to work intoxicated. Grimm indicated that he did not want to be reassigned because it would be disruptive to his family life. The supervisor referred Grimm to the Employee Assistance Program, but Grimm stated that he did not have a drinking problem and did not need the program.

In March 1992, a meeting was held by the center's chief executive officer, its former affirmative action officer, Gary Grimm, and his supervisor, to discuss appellants' sexual harassment allegations and Grimm's alleged drinking problem. The supervisor's notes indicate:

Gary stated that he could understand why [Oslin] might be fearful of retaliation, and then stated "And she should be", but then quickly attempted to clarify what he meant—not helping himself in the process.

Center management discussed appellants' allegations with the Department of Human Services, but neglected at least in some instances to inform the department about Gary Grimm's statement indicating that Oslin should be afraid of retaliation or about Grimm's referral to the Employee Assistance Problem or the previous allegations by other employees against Gary Grimm.

In April 1992, the center's chief executive officer issued Oslin a memorandum concluding that her complaint of assault by Gary Grimm at the January 1992 Christmas party was not verifiable. The executive issued Wiese a memorandum stating that her complaint of assault by Gary Grimm at the Christmas party had been substantiated. Gary Grimm received a three-day suspension in April 1992 as discipline for his actions towards Wiese, although there is some evidence that Grimm's suspension was treated as vacation time. Center management did not take any further action against Gary Grimm.

According to appellants, Gary and Linda Grimm retaliated against them following their report of Gary Grimm's actions at the January 1992 Christmas party. Wiese claimed that it became difficult to work under Linda Grimm. At one point, when Wiese asked Linda Grimm what to do about a patient who was having a seizure, Linda Grimm did not reply and glared at her. Appellants claim that Linda Grimm stated to coworkers that appellants were "lesbian lovers out after her husband." Oslin and Wiese complained that Gary Grimm was making harassing phone calls. On March 30, 1992, a threatening and harassing note was placed in Oslin's mailbox at work. In May 1992, appellants' vehicles were vandalized in the center parking lot. Appellants also claim that a wit-

ness's garage was vandalized twice in December 1992 and again in January 1993.

In August 1992 or thereabouts, appellants filed charges of reprisal discrimination with the Department of Human Rights. The Department dismissed Wiese's complaint, and Oslin voluntarily dismissed her own complaint to pursue a civil lawsuit.

Gary Grimm received a pay increase in May 1993, based on satisfactory job performance. In December 1993, the center promoted Gary Grimm to a daytime position of forensic unit supervisor.

The center investigated appellants' claims of reprisal by the Grimms and completed the investigation in February 1993. Oslin's allegations against Gary Grimm were found to be unsubstantiated. Wiese's allegation against Gary Grimm concerning the incident at the Christmas party was again found to be substantiated, but her allegations of disparate treatment or retaliation were found to be "[f]or the most part" unsubstantiated.

Appellant subsequently brought this suit, stating only civil law claims, on which the trial court granted summary judgment to respondents.

### ISSUES

1. Are respondents vicariously liable for the Grimms' alleged batteries and defamation of appellants?

2. Have appellants stated a claim for negligent supervision and negligent retention?

3. Are respondents immune from liability for negligent supervision and retention?

4. Have appellants supported their claim of negligent infliction of emotional distress?

5. Did the district court err by presiding over this action after filing a notice of recusal?

### ANALYSIS

1. Battery and defamation

The trial court concluded that respondents were not vicariously liable for appellants' battery and defamation claims because the Grimms' conduct was outside the scope of their employment. The court did not err.

An agent is acting within the scope of his employment when he is performing services for which he has been employed or while he is doing anything which is reasonably incidental to his employment. The conduct must occur within work-related limits of time and place. The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the principal but rather whether such conduct should fairly have been foreseen from the nature of the employment and the duties relating to it.

*Marston v. Minneapolis Clinic of Psychiatry*, 329 N.W.2d 306, 311 n. 3 (Minn.1982).

■ Sexual harassment of an employee by a supervisor can be, to a degree, foreseeable. *Cf. P.L. v. Aubert*, 527 N.W.2d 142, 147 (Minn.App.1995) (noting that sexual abuse of students by teachers has become a well-known hazard; thus holding that whether teacher's sexual abuse of student was "foreseeable, related to, and connected with acts otherwise within the scope of employment" was factual question), *review granted* (Minn. Apr. 27, 1995). And appellants submitted evidence supporting their claims that other employees had previously filed complaints against Gary Grimm for sexual harassment, intimidation, inappropriate use of alcohol, and assignment of women to work with men who had demonstrated unwelcome romantic interest.

■ Arguably, Gary Grimm would not have had the opportunity to harass Oslin and Wiese absent the employment relationship. Whether the Christmas party was "reasonably incidental" to the employment may be a question of fact; appellants have produced evidence that the treatment center itself believed the Christmas party was "an extension of the workplace." *But cf. Rautio v. International Harvester Co.*, 180 Minn. 400, 405, 231 N.W. 214, 216 (1930) (stating that "risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service"); *Lowry v. City of Mankato*, 231 Minn. 108, 114, 42 N.W.2d 553, 558 (1950) (concluding that " '[i]ncidental' has much the same meaning as 'accessory' and 'subordinate' and is

used to convey the idea of a thing being subordinate to, dependent on, and pertaining to another thing which is the principal one").

We conclude, however, as did the trial court, that Gary Grimm's acts during the Christmas party did not occur within the "work-related limits of time and space." The supreme court addressed a similar situation in *Leaon v. Washington County*, 397 N.W.2d 867 (Minn.1986). There, a deputy sheriff sued the county and other defendants for humiliating acts committed during an after-hours stag party for a coworker. The court affirmed, as a matter of law, the dismissal of the deputy's claim that the county should be liable for battery under a theory of respondeat superior:

> Plaintiffs argue the stag party was like an "office party" sponsored and supervised by an employer. We disagree. * * * Although the sheriff was aware of the stag party, there is no evidence suggesting the party was sponsored or supervised by Washington County. The party was not held at the employer's place of business, nor during normal working hours, nor did the employer furnish any of the refreshments. This was simply a private party by and for people who knew each other at work. An employer is not legally responsible for what his employees choose to do socially when off-duty.

*Id.* at 874.

Similarly, here, the Christmas party was not sponsored or supervised by the center or the state. The party was not held on the center's premises, but was held at a saloon, after the employees finished work. There is no evidence that the center furnished any refreshments or contributed to the party in any other manner. The fact that the party was discussed at work and that notices were put up in the staff lounge was not sufficient

to make the party a work-sponsored event, as appellants claim.

The *Leaon* court distinguished *Harris v. Trojan Fireworks Co.*, 120 Cal.App.3d 157, 174 Cal.Rptr. 452 (1981), cited by appellants. *Leaon*, 397 N.W.2d at 874. In *Harris*, the court found a sufficient connection between a Christmas party and an employee's negligent acts to justify holding the employer liable. But in *Harris*, the Christmas party occurred at the employer's manufacturing plant from noon until 4:00 p.m. *Harris*, 174 Cal.Rptr. at 453. Here, the Christmas party occurred off the employer's premises, in a private establishment, after the employees had finished work.[1]

■ Appellants claim that Linda Grimm stated to their coworkers that appellants were "lesbian lovers out after [Linda Grimm's] husband." There is evidence that Linda Grimm's statements were made while she was at work and within work-related limits of time and space, but we conclude that the statements should not "fairly have been foreseen from the nature of the employment and the duties relating to it." *Marston*, 329 N.W.2d at 311 n. 3.[2]

### 2. Negligent supervision or retention

■ Liability for negligent supervision of an employee is imposed under a theory of respondeat superior. *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 422 (Minn.App.1993), *review denied* (Minn. Apr. 20, 1993). The basis of liability is that the tortious act is committed in the scope of employment; whether the employer is at fault is immaterial. *Porter v. Grennan Bakeries*, 219 Minn. 14, 21–22, 16 N.W.2d 906, 909–10 (1944). In *Porter*, the court concluded that an employee was not acting within the scope of his employment when he was "not then doing what he was employed to do" and when he had

---

1. Appellants claim that Gary Grimm committed a second battery of appellant Wiese by brushing up against her during work and by failing to move out of her way. Wiese, however, did not raise this alleged battery in her pleadings.

2. Respondents cite *O'Brien v. A.B.P. Midwest, Inc.*, 814 F.Supp. 766 (D.Minn.1992) for the proposition that an employee's defamation oc-

curs within the scope of his employment "where his or her conduct furthers the interests of the employer." *Id.* at 773. But the Minnesota supreme court specifically rejected the interests-of-the-employer standard in *Marston*, stating that an employee's motivation is not a consideration when imposing vicarious liability for an intentional tort. *Marston*, 329 N.W.2d at 311.

"then departed from the space limits thereof." *Id.* at 19, 16 N.W.2d at 909.

Negligent retention imposes direct, not vicarious, liability upon an employer for an employee's actions. *Yunker,* 496 N.W.2d at 422. This theory of recovery imposes liability for an employee's intentional tort, which "almost invariably" occurs outside the scope of employment, if the employer "knew or should have known" of the employee's propensities. *Id.*

As already stated, Gary Grimm's alleged batteries and Linda Grimm's alleged defamation were not within the scope of their employment. Thus, the trial court properly concluded that respondents were not liable for these alleged wrongful acts under a theory of negligent supervision.

There is no evidence that respondents "knew or should have known" of any propensity by Linda Grimm to defame appellants or otherwise to retaliate against them. Therefore, the trial court properly dismissed appellants' claims against respondents for negligent retention of Linda Grimm.

Appellants' complaints allege that respondents are liable under a theory of negligent supervision for Gary Grimm's alleged retaliation and harassment "since January 4, 1992." [3] To prevail on this claim, appellants must show that respondents owed them a legal duty to avoid their injuries. *See Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 157 (Minn.1982) (basic elements necessary for claim of negligence include duty and breach of duty).

An employer has a duty to take prompt action on becoming aware of sexual harassment. *Continental Can Co. v. State,* 297 N.W.2d 241, 249 (Minn.1980). If an event is reasonably foreseeable, a duty to act may exist as a matter of law. *Germann v. F.L. Smithe Mach. Co.,* 395 N.W.2d 922, 924 (Minn.1986). To prevail on a claim of negligent supervision, a plaintiff must prove that the employee's conduct was foreseeable and

that the employer failed to exercise ordinary care when supervising the employee. *M.L. v. Magnuson,* 531 N.W.2d 849, 858 (Minn. App.1995), *review denied* (Minn. July 20, 1995); *P.L.,* 527 N.W.2d at 149.

Appellants have demonstrated that Gary Grimm's alleged harassment and retaliation may have been foreseeable, that respondents "knew or should have known" of Gary Grimm's propensity for harassment and retaliation, and that respondents may not have exercised ordinary care in supervising him. There is evidence that Gary Grimm had previously harassed, intimidated, and retaliated against women at work and that he threatened to retaliate against Oslin for her complaint against him.

We find no prior Minnesota case addressing a claim for negligent supervision or negligent retention based on general harassment or retaliation. Rather, the cases thus far have allowed these claims to proceed in the context of intentional torts. *See, e.g. Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn.1983) (claim based on rape); *Porter,* 219 Minn. at 21–22, 16 N.W.2d at 909–10 (claim based on assault and battery); *Dean v. St. Paul Union Depot Co.,* 41 Minn. 360, 43 N.W. 54 (1889) (claim based on assault); *P.L.,* 527 N.W.2d at 149 (claim based on sexual abuse); *Yunker,* 496 N.W.2d at 422 (claim based on shooting incident). But for the purposes of this appeal, we will assume that appellants have stated a proper claim against respondents for negligent supervision and retention based on Gary Grimm's alleged harassment and retaliation.

### 3. Immunity

Respondents argue that they are immune from liability for appellants' claims of negligent supervision and retention. The record demonstrates as a matter of law that respondents are immune from liability on a theory of discretionary immunity.

---

3. The harassment "since January 4 1992" would apparently encompass any alleged harassment after and not including the sexual harassment at the Christmas party on January 4, 1992. *See Lawver v. Great Northern Ry. Co.,* 97 Minn. 36, 38, 105 N.W. 1129 (1906) ("[a]n allegation that a condition has existed since a certain date does not include that date. 'Since' means 'after,' 'from the time of.'")

The Minnesota Tort Claims Act waives the state's immunity from tort liability "for injury to or loss of property or personal injury or death"[4] caused by a state employee while acting within the scope of office, in situations where a private employer would be liable, but retains the state's immunity where a loss is "caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." Minn.Stat. § 3.736, subd. 3(b) (1994).

Although the state is immune from liability for discretionary acts, the state remains liable for ministerial acts. *See Papenhausen v. Schoen,* 268 N.W.2d 565, 571 (Minn.1978). A ministerial act is "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Koelln v. Nexus Residential Treatment Facility,* 494 N.W.2d 914, 919 (Minn.App.1993), *review denied* (Minn. March 22, 1993). A discretionary act, on the other hand, involves a balancing of policy considerations and often involves decision-making at the planning level. *Rico v. State,* 472 N.W.2d 100, 104 (Minn.1991).

It is undisputed that when the center was put on notice of appellants' allegations of misconduct by the Grimms, the center took action to investigate and determine what should be done. Determinations by center management on the appropriate action to take under these circumstances were necessarily beset with policy-making considerations. For example, management needed to consider the importance of maintaining a workplace free of sexual harassment and the importance of deterring future misconduct. But while considering these policies, management may also have weighed competing policies, such as avoiding unnecessary disruption of the workplace and imposing discipline for alleged harassment only upon the establishment of substantial cause, both for the sake of staff and for protection from expense associated with proceedings premised on a claim of wrongful discipline.

The center's investigation and disciplinary decisions involved the type of legislative or executive policy decisions that we believe must be protected by discretionary immunity. The center's decisions did not simply require the application of professional judgment to a given set of facts, but were necessarily entwined in a layer of policy-making that exceeded the mere application of rules to facts.

Appellants argue that respondents are not immune from liability for the center's failure to convey certain information to the Department of Human Services to assist in the department's investigation of appellants' allegations against Gary Grimm because this failure to convey information was a ministerial, rather than a discretionary, act. *See S.L.D. v. Kranz,* 498 N.W.2d 47, 55 (Minn. App.1993) (holding that county was not immune from liability for continued sexual abuse of child resulting from social worker's failure to convey information to supervisor about report of child abuse; stating that failure to communicate "d[id] not involve planning decisions or the balancing of policy objectives"). We conclude that the circumstances here, unlike those in *S.L.D.,* are insufficient to create a cause of action for appellants. In *S.L.D.,* the parent of abused children furnished evidence that a supervisor would have intervened if there had not been a ministerial failure to report information. *Id.* at 49. By contrast, the record in this case is inadequate as a matter of law to show that Gary Grimm's alleged retaliation would not have occurred if more detailed information had been furnished to the Department of Human Services.[5]

---

4. Appellants claim that they lost wages and were denied promotions as a result of their complaints about Gary and Linda Grimm and that their vehicles and garages were vandalized. These facts, if proven at trial, would support a claim of injury to property sufficient to impose liability upon respondents. Furthermore, we conclude that defamation is a personal injury encompassed by the Tort Claims Act.

5. Appellants assert that the record demonstrates admissions that department advice to center management could have been different if more information had been furnished by one center administrator. This contention is not confirmed by the contents of the record. Initially, we find that the named administrator is not associated in the record with lapses in current reporting to the department. Moreover, where the record shows lapses in reporting by others, it is not shown that

4. Negligent infliction of emotional distress

■ A plaintiff may state a claim for negligent infliction of emotional distress if the plaintiff is "within a zone of danger of physical impact, reasonably fears for his or her own safety, and consequently suffers severe emotional distress with resultant physical injury." *Bohdan v. Alltool Mfg. Co.*, 411 N.W.2d 902, 907 (Minn.App.1987), *review denied* (Minn. Nov. 13, 1987). The zone of danger requirement may be replaced by an intentional tort such as defamation or another willful, wanton, or malicious act. *Id.*

■ Appellants based their claims of negligent infliction of emotional distress on their underlying claims of defamation and battery. Because the trial court properly dismissed appellants' claims for defamation and battery, the court also properly concluded that appellants' claims for negligent infliction of emotional distress must fail.

5. Assignment of judge

In January 1994, the court administrator notified the parties that the judge who was initially assigned to hear this matter, Judge Warren Litynski, had recused himself. According to the notice, an alternate judge was assigned to the case. Appellants subsequently filed a notice to remove the alternate judge under Rule 63.03 of the Minnesota Rules of Civil Procedure. In response, the court administrator sent the parties a notice indicating that the alternate judge had been removed from the case and that Judge Litynski had been reassigned.

■ Appellants thereupon sent the chief judge of the district a letter requesting further reassignment on the grounds that Judge Litynski had previously recused himself from the case. Appellants' letter asked the court to honor the prior recusal. The chief judge issued an order directing Judge Litynski to preside over the case and, without explanation, Judge Litynski presided over this matter. On appeal, appellants object to Judge Litynski's assignment solely on the basis that he had previously recused himself.

■ The Code of Judicial Conduct provides that a judge should disqualify himself if "the judge's impartiality might reasonably be questioned." Minn.Code Jud. Conduct, Canon 3C(1). Here, Judge Litynski never explained on the record why he originally disqualified himself. And his change of mind on recusing undoubtedly contributed to convictions that he was not impartial toward the case. But appellants' present objection to the assignment fails because they have not shown that the original recusal was prompted by any interest in the case; the record fails to show, in fact, that appellants even requested an explanation for Judge Litynski's initial recusal or his later choice to accept reassignment of the case.

Judge Litynski could have rescinded his prior recusal by explaining the reasons for that action. *See Schack v. Schack*, 354 N.W.2d 871, 874 (Minn.App.1984) (approving judge's decision to vacate prior disqualification with explanation and without admitting bias). In the alternative, Judge Litynski could have provided the parties the opportunity to accept him as a judge despite his prior recusal. *See* Minn.Code Jud. Conduct, Canon 3D (permitting, in lieu of withdrawal, disclosure on the record of the basis of a disqualification and permitting the parties the opportunity to agree that the judge may participate). Still, in the absence of these steps by a judge, his assignment will not be considered error on appeal where appellants have failed to make a record suggesting interest of the judge or at least his deliberate attempt to conceal an explanation for his actions. *Cf. Baskerville v. Baskerville*, 246 Minn. 496, 501, 75 N.W.2d 762, 766 (1956) (where defendant took no action to disqualify substituted judge for bias, court stated: "[a] litigant who * * * elects to go to trial without taking timely and appropriate action to disqualify a judge for bias waives his right to assert such bias").

their reports had any effects on department staff action. In fact, the director of the department's affirmative action office recommended that the center explore any prior employee complaints. Finally, the purported admissions are as to the significance of certain information in making conclusions about the case, but do not indicate that lapses in reporting to department staff affected the official handling of appellants' complaints.

## DECISION

The trial court properly dismissed appellants' claims for defamation, battery, negligent supervision and retention, and negligent infliction of emotional distress. Appellants' objection to the trial judge's decision to rescind his recusal lacks merit on a record void of a conflict or a refusal to explain the prior recusal.

**Affirmed.**