*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0970**

John Howard Bartz, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed December 27, 2016
Affirmed
Cleary, Chief Judge**

Winona County District Court
File No. 85-CR-11-598

John Howard Bartz, Bayport, Minnesota (pro se appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Karin L. Sonneman, Winona County Attorney, George R. Kennedy, Assistant County Attorney, Winona, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Cleary, Chief Judge; and Ross, Judge.

**UNPUBLISHED OPINION**

**CLEARY**, Chief Judge

On appeal from the district court's denial of his motion for correction of sentence, appellant John Howard Bartz argues that the sentencing judge was disqualified from

presiding over his case and that the district court erred by denying his motion, because: (1) his jail credit was miscalculated; (2) his sentence was illegally modified; and (3) the sentence imposed on him was not authorized by law. Because we conclude that the sentencing judge was qualified to preside over appellant's case and properly denied appellant's motion for correction of sentence, we affirm.

## FACTS

In March 2011, appellant argued with his live-in girlfriend, T.B. T.B. went to the home of J.S., her mother. The following day, appellant drank for several hours and went to J.S.'s house. Appellant broke a window, entered the house, and began searching for T.B. Appellant then began to choke J.S. T.B., who had been hiding, emerged, and appellant let go of J.S. and began to choke T.B. When police arrived, they found appellant straddling and choking T.B. on a bed. The officers forcibly removed appellant from T.B.

Appellant was charged with ten criminal counts and reached a plea agreement with the state. Pursuant to this agreement, appellant pleaded guilty to first-degree burglary and entered *Norgaard* pleas[1] to third-degree assault with substantial bodily harm and attempted first-degree assault. The state agreed to dismiss the remaining charges. Appellant and the state jointly agreed to the "presumptive guideline[s] sentence for each offense, to be sentenced consecutively." The agreement stated that "[i]t is the belief of the parties that this will result in the imposition of a sentence of 113 months." It also acknowledged that

---

[1] *State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 111-14, 110 N.W.2d 867, 871-72 (1961), allows a defendant to plead guilty even though he claims not to remember his alleged conduct.

the state would argue for commitment to the commissioner of corrections and execution of the sentence, while appellant would argue for a downward dispositional departure to a stay of execution.

A sentencing hearing was held on August 11, 2011. Several witnesses testified, including two psychologists. While the psychologist called by appellant testified that appellant was suffering from the effects of post-traumatic stress disorder while strangling T.B., the psychologist called by the state disputed that diagnosis and instead diagnosed him with chemical dependency and a personality disorder. A Winona County jail administrator also testified and explained that appellant was polite and compliant in jail. T.B. testified that appellant is a "loving person" and a "[v]ery good dad" and requested that he be allowed to come home. Two victim impact statements were read, and the district court considered information included in appellant's presentence investigation (PSI) report.

The judge ordered appellant to serve consecutive sentences of 60 months in prison for first-degree burglary and 48 months in prison for attempted first-degree assault. He additionally ordered a 15-month sentence for third-degree assault. Following appellant's request to execute his sentence for third-degree assault, the sentencing judge ordered that the 15-month sentence was to be served concurrently with appellant's first-degree burglary sentence. During the hearing, the sentencing judge explained that both parties' attorneys had expected that appellant would be sentenced to 113 months, because they expected appellant to receive the presumptive sentence of 58 months for first-degree burglary and the presumptive sentence of 55 months for attempted first-degree assault. The parties anticipated that these sentences would be calculated with one criminal-history point for

3

first-degree burglary and with two criminal-history points for attempted first-degree assault. The sentencing judge used zero criminal-history points when calculating appellant's sentence for attempted first-degree assault. As a result, the presumptive non-departure range for attempted first-degree assault was 37 to 51.5 months, with a middle-of-the-box sentence of 43 months. During sentencing, the sentencing judge noted that he imposed a total of 108 months, five months less than appellant expected, and explained that the sentence was proper under the circumstances.

On appeal, appellant argued that the sentencing judge erred by denying his motion for a downward dispositional departure and by executing his sentences consecutively rather than concurrently. *State v. Bartz*, No. A11-2013, 2012 WL 3892144, at *3-4 (Minn. App. Sept. 10, 2012), *review denied* (Minn. Nov. 27, 2012). This court affirmed on September 10, 2012, concluding that the district court properly considered the reasons that were offered to support a departure and did not abuse its discretion by executing the sentences consecutively. *Id.* In November 2014, appellant filed two motions. In the first, appellant requested that the district court issue an "Order of Recusal" upon the sentencing judge. In the second, appellant moved to withdraw his guilty plea. In December 2014, the sentencing judge recused himself from any further consideration of appellant's case. A different judge was assigned, and, on March 23, 2015, this judge denied appellant's motion to withdraw his plea. Appellant appealed, and this court affirmed, concluding that all but one of appellant's claims were procedurally barred under *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), and that the remaining claim was without merit. *Bartz*

4

*v. State*, No. 15-0759, 2016 WL 456927, at \*2-3 (Minn. App. Feb. 8, 2016), *review denied* (Minn. Apr. 27, 2016).

In April 2016, appellant filed a motion in district court, seeking sentence correction under Minn. R. Crim. P. 27.03, subds. 9-10.  In his motion, appellant asserted that the sentencing judge miscalculated his jail credit, improperly increased the sentence imposed during the sentencing hearing, and wrongfully departed from the parties' agreement to a "presumptive guideline[s] sentence."  In May 2016, the sentencing judge denied appellant's motion, concluding that:  (1) the court properly excluded August 11, 2011, from appellant's jail credit, because the department of corrections (DOC) was to credit appellant for that date; (2) the court did not illegally increase appellant's sentence; and (3) the court acted within its discretion when sentencing appellant and imposed only presumptive sentences.  Appellant now appeals.

## D E C I S I O N

### I.    Qualification of Sentencing Judge

Appellant first argues that the sentencing judge was disqualified from presiding over his case and ruling on his April 2016 motion for sentence correction.  Appellant asserts that the judge's personal history rendered him biased, and he points to several actions to demonstrate this bias.

Whether a judge is disqualified from presiding over a case is a question of law, which appellate courts review de novo.  *In re Jacobs*, 802 N.W.2d 748, 750 (Minn. 2011).  Cause for removal of a judge exists if the judge would be disqualified under the Minnesota Code of Judicial Conduct.  *Id.* at 751.  The code provides that "[a] judge shall disqualify

5

himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Minn. Code of Jud. Conduct Rule 2.11(A). Although judges are to avoid even the appearance of impropriety, "a judge who feels able to preside fairly over the proceedings should not be required to step down upon allegations of a party which themselves may be unfair or which simply indicate dissatisfaction with the possible outcome of the litigation." *Jacobs*, 802 N.W.2d at 752 (quotation omitted). The "standard for determining whether a judge must be disqualified due to an appearance of partiality is whether a reasonable examiner, with full knowledge of the facts and circumstances, would question the judge's impartiality." *Id.* at 753.

Appellant first argues that the sentencing judge was biased because of his personal history. We presume that judges are "able to approach every aspect of each case with a neutral and objective disposition." *Id.* at 754 (quotation omitted). An examination of the facts and circumstances must take into account the expectation that judges will not allow their personal interests to affect their decision-making. *Id.* Even assuming that appellant is correct about the sentencing judge's personal history, our review of the record shows no evidence that the judge allowed any personal interests to influence his judgment.

As evidence of bias, appellant points to the sentencing judge's questioning of the psychologist called by the state. "[I]t is within the discretion of the trial court to question a witness called by a party." *Olson v. Blue Cross & Blue Shield*, 269 N.W.2d 697, 702 (Minn. 1978). To determine whether a district court showed bias by questioning a witness, the Minnesota Supreme Court has considered the strength of the questioning and whether the district court had a duty to make a decision in the case. *Id.* Here, the questioning was

not so strong as to indicate prejudice, and the judge himself had a duty to decide appellant's sentence. As a result, the judge's questioning of the state's witness does not show bias.

Appellant next argues that the sentencing judge showed bias by disclosing information from his PSI report to the courtroom in violation of Minn. Stat. § 609.115, subd. 6 (2010). Minn. Stat. § 609.115, subd. 6, provides that a PSI report shall not be disclosed except in certain circumstances, such as to the parties, the commissioner of corrections, and the local jail, "or as otherwise directed by the court." From our review of the record, we conclude that the sentencing judge did not violate Minn. Stat. § 609.115, subd. 6, or exhibit bias by discussing the contents of appellant's PSI report when determining and justifying the sentences imposed.

Appellant next asserts that the sentencing judge conducted an improper independent investigation and showed bias, because he cited cases that were not cited by the state. A court is not limited to considering only those cases cited by the parties. Rather, "[e]very court of this state shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States." Minn. Stat. § 599.04 (2014). Because the sentencing judge was required to take judicial notice of the common law and statutes of every jurisdiction of the United States, his citation to cases that neither party had presented provides no evidence that he conducted an independent investigation. Here, the judge considered the arguments presented by appellant and the state and appropriately reviewed relevant law. The sentencing judge did not conduct an independent investigation or show bias by reviewing and citing cases that neither party had presented.

Finally, appellant argues that the sentencing judge was disqualified from presiding over any proceedings in his case that occurred after the judge's December 2014 recusal. However, a judge who recuses himself from a case can later rescind the recusal. *Oslin v. State*, 543 N.W.2d 408, 417 (Minn. App. 1996), *review denied* (Minn. Apr. 1, 1996). A judge's assignment to a case from which he had earlier recused himself "will not be considered error on appeal where appellants have failed to make a record suggesting interest of the judge or at least his deliberate attempt to conceal an explanation for his actions." *Id.* Here, the sentencing judge did not explain why he recused himself. Appellant asserts that the judge concealed the reasons for his actions by failing to explain his recusal and subsequent decision to preside over appellant's case. When rescinding a prior recusal, a judge should explain the reasons for the rescission or provide the parties an opportunity to accept him despite his prior recusal. *Id.* It is clearly the best practice for a presiding judge to do so. Nonetheless, this court will not assign error based solely upon the presiding judge's failure to explain his reasons for rescinding a prior recusal. *Id.* Because appellant has failed to provide evidence to suggest that the judge had an interest in the case or deliberately attempted to conceal an explanation for his actions, we conclude that the sentencing judge was not disqualified because of his prior recusal.

Here, a reasonable examiner, with full knowledge of the facts and circumstances, would not question the impartiality of the sentencing judge. For this reason, the sentencing judge was qualified to preside over appellant's case and rule on his motion for correction of sentence.

**II.    Motion for Correction of Sentence**

Appellant next asserts that the district court erred by denying his motion for correction of sentence. A motion for sentence correction is addressed to the district court's discretion and will be reversed on appeal only when discretion is not properly exercised and the sentence is unauthorized by law. *State v. Cook*, 617 N.W.2d 417, 419 (Minn. App. 2000), *review denied* (Minn. Nov. 21, 2000). In his motion for correction of sentence, appellant requested relief under Minn. R. Crim. P. 27.03, subds. 9-10. Pursuant to Minn. R. Crim. P. 27.03, subd. 9, a "court may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd. 10, further authorizes a court to correct at any time clerical mistakes in a judgment, order, or in the record arising from oversight or omission.

### *Jail Credit Calculation*

Appellant first argues that he was entitled to a recalculation of his jail credit under Minn. R. Crim. P. 27.03, subds. 9-10. Because the record provides no evidence of a clerical error, this court need only determine whether the district court incorrectly calculated appellant's jail credit and imposed a sentence not authorized by law.

The decision to award jail credit is not discretionary and is a mixed question of fact and law. *State v. Johnson*, 744 N.W.2d 376, 379 (Minn. 2008). Appellate courts review a district court's interpretation of the rules of criminal procedure de novo and its factual findings under the clearly erroneous standard. *Id.* "The defendant bears the burden of establishing entitlement to credit for time spent in custody during criminal proceedings." *Id.*

9

Appellant was detained in jail beginning on March 23, 2011. On August 11, 2011, appellant was sentenced and transferred to the custody of the DOC. The parties agree that the district court declined to grant jail credit for August 11, 2011. Appellant argues that he is entitled to credit for this day and that the district court should have awarded him 142 days jail credit. He asserts that his supervised-release date should be Thursday, March 23, 2017, but was incorrectly calculated as Friday, March 24, 2017, because of the district court's failure to award jail credit for August 11, 2011.[2] The state argues that August 11, 2011 should count toward appellant's time served in the DOC and that the district court properly denied appellant's request for correction of his jail credit.

To support his argument, appellant cites *State v. Jackson*, 557 N.W.2d 552 (Minn. 1996), for the proposition that a defendant should receive jail credit for each day or partial day during which he is held in jail. In *Jackson*, the Minnesota Supreme Court quoted our unpublished *Kaliszewski* opinion and explained that "'[i]n computing jail time credit, each day in jail should be counted.'" *Jackson*, 557 N.W.2d at 554 (quoting *Kaliszewski v. State*, No. C5-87-2043, 1988 WL 15869, at *1 (Minn. App. Mar. 1, 1988)). "Rule 27.03 and the sentencing guidelines both require credit for all time spent in custody." *Id.* (quotations omitted). As a result, the supreme court concluded "that if a defendant spends part of a day [in jail] on the day of arrest, and part of a day in jail on the day of release, he should receive a full credit for each day." *Id.*

---

[2] Appellant explains that the DOC listed his release date as March 27, 2017, because the DOC calculated his release date as occurring on March 24, 2017, and has a policy against releasing inmates on Fridays, Saturdays, and Sundays. As a result of this policy, appellant's Friday, March 24, 2017 release date was adjusted to Monday, March 27, 2017.

10

However, appellant's case is unlike *Jackson* and *Kaliszewski*. In *Jackson*, the Minnesota Supreme Court determined that a defendant is entitled to receive a full day of credit for his final day in jail when he spends part of the day in jail *on the day of release*. *Id.* Similarly, in *Kaliszewski*, this court concluded that a defendant was entitled to a day of jail credit *on the day of his release from jail*. *Kaliszewski*, 1988 WL 15869, at *1-2. Here, however, appellant is demanding jail credit for the day on which he was transferred from jail to the DOC. A defendant who is transferred from one state establishment to another is entitled to only one day of custody credit for the transfer date.[3] This rule properly credits a defendant for all time spent in custody in connection with an offense and ensures that jail-credit awards are given fairly and equitably. *See State v. Arend*, 648 N.W.2d 746, 748 (Minn. 2002) (explaining that a defendant is entitled to jail credit for all time in custody for an offense and that jail-credit awards are governed by "principles of fairness and equity").

Appellant argues that he has demonstrated that the DOC failed to credit him for August 11, 2011. Although the record indicates that the DOC likely erred in calculating appellant's supervised-release date, such an error does not entitle appellant to relief under Minn. R. Crim. P. 27.03, subd. 9. A motion brought under Minn. R. Crim. P. 27.03, subd. 9, provides for review of the legality of the district court's sentence at the time it was

---

[3] In *Kaliszewski*, this court explained that a defendant, who was transferred from a Utah jail to a Washington County jail, was entitled to only one day of credit for the transfer date. *Id.* Although our opinion in *Kaliszewski* is not precedential, we find its reasoning persuasive. *See* Minn. Stat. § 480A.08, subd. 3 (2014) ("Unpublished opinions of the Court of Appeals are not precedential."); *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn. App. 1993) (holding that unpublished opinions may be persuasive).

11

imposed, but is not the proper procedure to obtain judicial review of the commissioner's administrative decision implementing that sentence. *State v. Schnagl*, 859 N.W.2d 297, 302-04 (Minn. 2015). Because Minn. R. Crim. P. 27.03, subd. 9, provides no relief for errors committed by the DOC when implementing a sentence, the district court did not err by denying appellant's request to recalculate his jail credit. Appellant may obtain judicial review of the commissioner's implementation of the sentence by filing a petition for writ of habeas corpus in which the commissioner is named as a party. *Id.* at 304.

### *Modification of Sentence*

Appellant argues that the district court erred by denying his request to reduce his sentence for first-degree burglary to 58 months. He asserts that the court imposed a 58-month sentence and modified his sentence to 60 months in violation of Minn. R. Crim. P. 27.03, subd. 9, which allows a court to modify a sentence during a stay of execution or imposition of sentence if the court does not increase the period of confinement.

Appellant's argument focuses upon the language that the district court used during the sentencing hearing. The district court first stated, "That the proper sentence [for first-degree burglary] or the presumptive sentence I should say is a commitment to the Commissioner of Corrections, and I'm going to sentence you . . . to be committed to the Commissioner of Corrections for 58 months." The court later said, "On No. 1 [the first-degree-burglary offense] I'm going to impose a sentence of 60 months."

The sentencing hearing transcript is ambiguous as to the sentence that the district court imposed for first-degree burglary. This court has previously held that "[w]hen an orally pronounced sentence is ambiguous . . . the judgment and commitment order is

12

evidence which may be used to determine the intended sentence." *State v. Staloch*, 643 N.W.2d 329, 331 (Minn. App. 2002) (quotation omitted). The very purpose of the written order is "to help clarify an ambiguous oral sentence by providing evidence of what was said from the bench." *Id.* (quotation omitted). Here, the district court's warrant of commitment clarifies the ambiguous oral sentence and clearly provides that a 60-month sentence was imposed for first-degree burglary. Because a 58-month sentence was never imposed, the district court did not increase the period of appellant's confinement in violation of Minn. R. Crim. P. 27.03, subd. 9. The district court did not err by denying appellant's request to reduce his sentence for first-degree burglary to 58 months.

### *Sentences Unauthorized by Law*

Finally, appellant argues that the district court erred by denying his motion for sentence correction, because the sentences imposed violated the plea agreement and were unauthorized by law. "[T]he trial court judge must reject or accept the plea of guilty on the terms of the plea agreement." Minn. R. Crim. P. 15.04, subd. 3(1). Appellant asserts that the plea agreement, which stated that he was to receive a "presumptive guideline[s] sentence for each offense," required the court to impose the middle-of-the-box sentences of 58 months for first-degree burglary and 43 months for attempted first-degree assault. He argues that the district court misconstrued the plea agreement to allow it to impose any sentence within the presumptive guidelines range and erroneously imposed sentences of 60 months for first-degree burglary and 48 months for attempted first-degree assault. Appellant asserts that by imposing the 60-month and 48-month sentences, the court violated Minn. R. Crim. P. 15.04, subd. 3(1) and thereby imposed a sentence unauthorized

13

by law. As a result, appellant argues that he is entitled to sentence correction under Minn. R. Crim. P. 27.03, subd. 9.

The state counters that the district court properly denied appellant's request to reduce his sentence, because appellant's claim should be treated as a petition for postconviction relief. The Minnesota Supreme Court has recognized that courts, in some circumstances, have the authority to treat a request to correct a sentence purportedly brought under Minn. R. Crim. P. 27.03 as a petition for postconviction relief. *State v. Coles*, 862 N.W.2d 477, 480 (Minn. 2015).

Appellant's claim does not fall within the limited scope of Minn. R. Crim. P. 27.03, subd. 9. The Minnesota Supreme Court has explained that "a challenge to a sentence imposed as part of a plea agreement involves more than simply the sentence." *Coles*, 862 N.W.2d at 481. In many plea agreements, the conviction and sentence components are interrelated. *Id.* "[W]here the sentence at issue is imposed as part of a plea agreement and the appellant's requested relief would alter the benefit of the bargain struck, Minn. R. Crim. P. 27.03, subd. 9 does not apply." *Johnson v. State*, 877 N.W.2d 776, 779 (Minn. 2016) (quotations omitted).

Here, appellant's convictions and sentences are interrelated parts of a negotiated package that significantly benefited both parties. In the plea agreement, appellant agreed to plead guilty to first-degree burglary, enter *Norgaard* pleas to third-degree assault and attempted first-degree assault, and accept a presumptive guidelines sentence for each offense in exchange for the state's dismissal of the remaining charges. While appellant benefited from the dismissal of the remaining charges against him, the state benefited from

14

the guarantee that appellant would be given a presumptive guidelines sentence for each conviction. Appellant's challenge to his sentences implicates his convictions and could alter the benefit of the plea bargain. As a result, we conclude that Minn. R. Crim. P. 27.03, subd. 9, does not apply.[4]

Because Minn. R. Crim. P. 27.03, subd. 9, provides no relief for the district court's alleged failure to sentence appellant according to the plea agreement's terms, appellant's claim should be characterized as a petition for postconviction relief. Claims asserted in a postconviction petition may be *Knaffla*-barred. *Johnson*, 877 N.W.2d at 779-80. The *Knaffla* rule provides that "[o]nce a direct appeal has been taken, all claims that were raised in the direct appeal and all claims that were known or should have been known but were not raised will not be considered upon a subsequent petition for postconviction relief." *White v. State*, 711 N.W.2d 106, 109 (Minn. 2006). However, there are two recognized exceptions to this rule: (1) a claim known but not raised on direct appeal is not barred if its novelty was so great that its legal basis was not reasonably available when the direct appeal was taken; and (2) a claim is not barred in limited situations "when fairness so requires" if the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007).

---

[4] We note that the sentences imposed were within the presumptive guidelines ranges. The district court imposed a 60-month sentence for first-degree burglary and a 48-month sentence for attempted first-degree assault. The presumptive range for first-degree burglary with one criminal-history point is 50 to 69 months. Minn. Sent. Guidelines II.G, IV-V (2010). The presumptive range for attempted first-degree assault with zero criminal-history points is 37 to 51.5 months. *Id.*

Appellant's claim that the district court imposed sentences that violated the plea agreement is based upon evidence that was available to appellant before his direct appeal occurred. As a result, this claim was known or should have been known at the time of the direct appeal. Because appellant has failed to establish that any exception to the *Knaffla* rule applies, his claim is *Knaffla*-barred. The district court did not err by denying appellant's motion for correction of sentence.

**Affirmed.**