A. DOE, as Mother and Next Friend of B. DOE, a Minor; A. Roe, as Mother and Next Friend of B. Roe, a Minor; and A. Jones, as Mother and Next Friend of B. Jones, Appellants,

v.

CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT, Appellee.

No. 01–0648.

Supreme Court of Iowa.

Sept. 5, 2002.

Rehearing Denied Oct. 30, 2002.

Anne Updegraff of Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

Matthew G. Novak and Thad J. Collins of Pickens, Barnes & Abernathy, Cedar Rapids, for appellee.

STREIT, Justice.

Three female students sued the Cedar Rapids Community School District alleging improper sexual conduct by a teacher with the students. The suit was based on Gary Lindsey's alleged improper conduct with the three girls at Van Buren Middle School in 1995 where Lindsey was their music teacher. The action was premised on theories of respondeat superior and negligent hiring, retention, and supervision of Lindsey. The district court granted summary judgment finding the School was protected from liability under the discretionary function immunity. Because we find the discretionary function immunity does not apply to the acts of a school district in hiring, retaining, and supervising an individual employee, we reverse and remand.

## I. Background and Facts

Gary Lindsey has a long history of allegations of misconduct related to his employment as a teacher for two school districts. We begin in 1964 while Lindsey was employed by the Oelwein Community School District. One of the fifth grade girls said Lindsey improperly touched her. Lindsey explained his conduct saying, "I guess it was a lust for the flesh." Admitting the allegations against him, Lindsey resigned from his position during the middle of the school year.

In 1972, while Lindsey was employed by the Cedar Rapids Community School District, several students made accusations of improper conduct against him. Lindsey was involved in an altercation with one of his students. He slammed the boy up against a locker and grabbed his throat. Another student lodged a complaint in 1986 concerning disciplinary measures taken by Lindsey against the student. There are no documents available regarding this particular allegation. In 1988, Lindsey admitted telling a male student he "would not live to [the] age [of] seventeen as driving too fast, drugs, or sex would get him before that." The School required Lindsey to apologize.

After these incidents of misconduct, the School adopted policies and regulations to apply to Lindsey's conduct. It implemented a policy entitled "Student Welfare" that states, in part, "The District will make every effort to protect, improve, and maintain the physical, emotional, and social well-being of students." The School also adopted a policy regarding the evaluation of its teachers. This policy provided, "The purpose of this process should be to identify and strengthen positive areas of employee performance, as well as to identify and correct deficiencies in employee performance."

In 1990 the School again reprimanded Lindsey after a fifth grade female student claimed Lindsey made inappropriate comments to her about her clothes. The student told her mother she was "going to wear her tight pants today, because Mr. Lindsey said he really liked them on me." Lindsey exchanged notes with the student in which he discussed parts of her body and called her "Sweet Pea." He engaged in physical contact including back rubs with her and had lunch sessions with her in his classroom. Lindsey did not dispute any of the girl's allegations. The School respond-

ed to this situation by issuing Lindsey a letter of reprimand. The School warned Lindsey that if another situation of this sort occurred, serious disciplinary action would be taken, including possible termination.

The final allegations of misconduct are the ones before us on appeal. Minor Roe was nine years old in 1995 and in the third grade at Van Buren Elementary School in Cedar Rapids. Roe said Lindsey placed her hands on his penis, hugged her, and kissed her. At Lindsey's request, Roe would stay in Lindsey's classroom alone with him during recess. Lindsey also blew kisses at Roe and told her she was a pretty girl and that he liked her very much.

Similar allegations were reported by Minor Doe who was eight years old and in the third grade at Van Buren. Doe said Lindsey placed her hands on his penis on more than one occasion. Lindsey testified that he "could not recall one way or the other" whether he had made Doe touch his penis. He also hugged and kissed her. Lindsey claimed he could not remember whether or not he kissed Doe. Like Roe, Lindsey asked Doe to stay alone with him in his classroom during lunch. Lindsey gave Doe a flower in a vase, though Lindsey denied this allegation.

Finally, a third student made charges similar to the above allegations. Minor Jones was eight years old and in the third grade at Van Buren. On more than one occasion, Lindsey placed her hands on his penis and hugged her. Lindsey admitted he hugged each of the three girls.

On August 7, 1998, their mothers on behalf of their minor daughters filed suit against the Cedar Rapids Community School District and Gary Lindsey. Alleging Lindsey's improper contact with the three girls, the minors premised their suit on theories of respondeat superior and negligent hiring, retention, and supervi-

sion. The School filed a motion for summary judgment challenging the respondeat superior claim asserting Lindsey's alleged misconduct was beyond the scope of his employment as a matter of law. The School also argued that judgment as a matter of law on the negligence claims was appropriate because there was no evidence the School knew or should have known of Lindsey's unfitness to teach. Alternatively, the School contends it is immune under the discretionary function exception of Iowa Code section 670.4(3) (1995).

The district court concluded Lindsey's alleged misconduct was beyond the scope of his employment and granted summary judgment on the vicarious liability claims. In the claim based on negligent hiring, retention, and supervision, the court found the minors generated a factual issue on whether the School had adequate notice of past misconduct to render Lindsey's acts foreseeable. Notwithstanding, the court concluded the School was immune under the discretionary function exception. Specifically, the court found the School did take some action regarding prior accusations against Lindsey. It then ruled hiring and supervision of employees involves the type of policy considerations the discretionary function exception was designed to shield from challenge.

The minors appeal challenging the district court's grant of summary judgment based on discretionary function immunity. They contend the immunity should not apply when a school hires, retains, or fails to supervise a teacher when it knows or should know the specific teacher has a proclivity to assault children. Specifically, the minors allege because Lindsey was previously fired from another school during the middle of a school year for misconduct, the School should have discovered this information in the hiring process. To support their claim of negligent retention

and supervision, the minors show a pattern of misconduct citing a 1990 reprimand for inappropriate comments and contact with a student and 1992 allegations of improper contact. The minors further claim the School policies and the terms of the 1990 reprimand established a mandated procedure to prevent further abuse of students, and therefore there was no judgment involved in the School's failure to take corrective action. In such case, the minors argue the discretionary function immunity does not apply.

## II. Scope of Review

■ Our review of a denial of a motion for summary judgment is for correction of errors at law. *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 857 (Iowa 2001) (citation omitted). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3) (2002).

## III. The Merits

On appeal, the minors only challenge the district court ruling granting summary judgment to the School on the issue of negligent hiring, retention, and supervision. They do not appeal the court's ruling on the respondeat superior claim. Therefore, we will concentrate our efforts on the issue of the discretionary function immunity, as this was the basis of the district court's ruling.

## A. Discretionary Function Immunity

■ Our first step is to determine whether the district court correctly found the discretionary function immunity applies here. The district court found con-

siderations involved in the hiring and retention of school district employees include the type of balancing of competing interests the discretionary function immunity is designed to protect. Simply because the government entity exercised some discretion in a particular action does not assure it immunity. Today, liability is the rule and immunity the exception. *Young v. City of Des Moines,* 262 N.W.2d 612, 620 (Iowa 1978), *overruled on other grounds by Parks v. City of Marshalltown,* 440 N.W.2d 377, 379 (1989). Governmental entities are entitled to immunity only to the extent permitted by statute. Iowa Code section 670.4(3) provides immunity from

> [a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

■ The issue then is whether the School's conduct in hiring, retaining, and supervising a particular teacher is immune from suit. In Iowa, we have adopted the test articulated by the United States Supreme Court for testing whether the discretionary function immunity applies. *Goodman v. City of LeClaire,* 587 N.W.2d 232, 237–38 (Iowa 1998) (citing *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). It is a two-prong test. The first inquiry is whether the challenged conduct was a matter of choice for the acting employee. Then, if we find an element of judgment is involved in the challenged conduct, we must determine whether the judgment is of the kind the discretionary function exception was designed to shield. This prong of the test protects governmental actions and decisions based on considerations of public policy grounded on social, economic, and political reasons. *City of Cedar Falls v. Ce-*

*dar Falls Cmty. Sch. Dist.,* 617 N.W.2d 11, 19 (Iowa 2000). If the answer to either of these questions is negative, then the discretionary function exemption does not apply. *Id.* (citing *Goodman,* 587 N.W.2d at 237–38). The district court found the School is immune because the judgment the School exercised in hiring and supervising Lindsey is of the type the immunity was designed to protect.

**1. Was an element of judgment or discretion involved?**

We must first determine whether the School's actions were a matter of choice or judgment. *Goodman,* 587 N.W.2d at 237 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958–59, 100 L.Ed.2d at 540–41). If the School's conduct cannot be "appropriately the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Id.* Nearly all challenged conduct can be characterized as the exercise of some judgment or discretion as "[j]udgment is exercised in almost every human endeavor." *Kansas State Bank & Trust Co. v. Specialized Transp. Servs. Inc.,* 249 Kan. 348, 819 P.2d 587, 600 (1991) (quoting *Downs v. United States,* 522 F.2d 990, 995 (6th Cir.1975)).

The School appears to argue it is only liable for decisions made contrary to policies that would not allow choice. This bright line analysis suggested by the School is precisely what we moved away from when we abandoned the planning/operational test. *Goodman,* 587 N.W.2d at 236–38. As such, we will again apply the *Berkovitz* test which provides an analytical framework for even the most uncertain cases. We now turn to this analysis.

■ The first prong of the *Berkovitz* test is easily satisfied in this case. When the School hired Lindsey it exercised its professional judgment. It was faced with the decision to either hire Lindsey or not

hire Lindsey. When it retained Lindsey after a series of allegations of misconduct, the School further made this decision based on choice. Finally, when the School supervised Lindsey as a result of the misconduct, it exercised judgment. Therefore, the first prong of the discretionary function immunity is satisfied.

The School seems to argue that once we find it exercised discretion in hiring, retaining, and supervising Lindsey its actions are immune from suit. Not all discretionary acts involving skill or judgment are immune simply because the legislature has empowered the state or its agents to act. *See Ex parte Cranman,* 792 So.2d 392, 404 (Ala.2000). The School clearly misapprehends the test we articulated in *Goodman.* Though the School exercised some discretion in this matter, that does not automatically guarantee immunity. Rather, once we decide an element of discretion was involved, we then must determine whether that discretion was of the nature the legislature intended to insulate from liability. We now turn to the second part of the test and consider whether the nature of the challenged act is entitled to immunity.

**2. Is the challenged conduct of the nature the legislature intended to shield from liability?**

In moving away from the more strict planning/operational dichotomy in *Goodman,* we did not expand the scope of the governmental function immunity to include all decisions based on policy. Rather, we must consider whether the challenged action was "grounded in social, economic, and political policy." *City of Cedar Falls,* 617 N.W.2d at 19 (quoting *Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. at 1959, 100 L.Ed.2d at 541); *see, e.g., Bustamente v. Jefferson Parish Inspection & Code Enforcement,* 683 So.2d 822 (La.Ct. App.1996) (dismissing building code viola-

tions is immune); *Martin County v. Indiantown Enters., Inc.,* 658 So.2d 1144 (Fla. Dis.Ct.App.1995) (county officials' oral representations regarding an informal extension of a demolition order is immune). The shield applies if the School's challenged conduct involved considerations of public policy. *Id.* The more the School's judgment involved policy-making the more it is to be recognized as immune from judicial process. *See Kansas State Bank & Trust Co.,* 819 P.2d at 600. If the challenged conduct involved a "high degree of discretion and judgment ... in weighing alternatives and making choices with respect to public policy and planning," the School should be immune from liability. *Hacking v. Town of Belmont,* 143 N.H. 546, 736 A.2d 1229, 1232 (1999). Based upon the facts before us, we conclude the School's judgment concerning this teacher did not involve the permissible exercise of policy judgment.

The School cites a number of cases purporting to support its contention that a school district's decision to hire, retain, and supervise a teacher is immune from judicial process. However, none of these cited cases articulates any policy reasons behind the schools' actions that our legislature intended to insulate from liability. In *Gordon v. Ottumwa Community School District,* the federal district court for the southern district of Iowa predicted that this court would conclude employment decisions relating to hiring, supervision, and retention of employees are protected by the discretionary function immunity. *Gordon v. Ottumwa Cmty. Sch. Dist.,* 115 F.Supp.2d 1077 (S.D.Iowa 2000). However, noticeably absent from this case is any discussion of specific policy considerations involved in such decisions. Rather, the court simply found "hiring, retention, training and supervision of public employees involves discretionary, policy-related

decisions for which a public entity is immune from liability." *Gordon,* 115 F.Supp.2d at 1087. Both the court in *Gordon* and the School have cited a number of other cases that merely assert policy considerations were involved without articulating the substance of such policies. *See, e.g., Davis v. DeKalb County Sch. Dist.,* 996 F.Supp. 1478, 1484 (N.D.Ga.1998); *Does 1, 2, 3 & 4 v. Covington County Sch. Bd.,* 969 F.Supp. 1264, 1285–87 (M.D.Ala. 1997); *Willoughby v. Lehrbass,* 150 Mich. App. 319, 388 N.W.2d 688, 700 (1986); *Doe v. Park Ctr. High Sch.,* 592 N.W.2d 131, 135–36 (Minn.Ct.App.1999) (applying operational/planning dichotomy, the court discussed policies relating to investigation of allegations of misconduct).

The School has not shown any social, political, or economic factors existed at the heart of its decisions concerning this teacher. The choice to hire, retain, and supervise a particular teacher does not involve policy decisions entitled to protection from judicial review. *See, e.g., Willis v. Dade County Sch. Bd.,* 411 So.2d 245 (Fla.Dist.Ct.App.1982) (applying the planning/operational dichotomy rejected by us in *Goodman,* court concluded filling a position of employment in the school district is not a discretionary function for which a school district is immune from suit in tort for negligent retention and hiring); *Doe v. Estes,* 926 F.Supp. 979, 989 (D.Nev.1996) (applying the planning/operational dichotomy, court found discretionary immunity doctrine did not bar claims against school for negligent retention and supervision of teacher). The administrative act of hiring, retaining, and supervising an individual teacher does not involve the careful balancing of competing interests, risks, and advantages. It is merely a choice made by a school district to offer or not offer a position of employment within the district to a particular individual.

■ It is possible, with minimal effort, to articulate some notion of policy considerations involved in any decision. Although a school administration may very well make policy decisions concerning teachers and their conduct, a decision concerning an individual teacher with these policies as a backdrop does not catapult those decisions into the zone of immunity of the discretionary function. Decisions about individual teachers that may have policy implications do not elevate such decisions to the level of economic, political, or social policy-making. Only decisions grounded in economic, political, or social policy considerations are exempt from liability. *City of Cedar Falls,* 617 N.W.2d at 19. The choices inherent in hiring, retaining, and supervising a particular teacher are not policy choices our legislature intended to immunize. They do not affect the "big picture" but rather have impact on a very small scale. These decisions must be made by every school district when a teaching position is vacant and must be filled. Such decisions are no different than a government employee's decision to turn left or right at a stop sign. Actions of this nature are not immune from liability because they are not real policy decisions implicating governmental functions.

Under the present facts, the School received an application, reviewed it, presumably interviewed Lindsey and decided whether or not to hire him. Once on staff, the School's decision to renew his contract did not involve policy considerations. Finally, the School's choice to either supervise Lindsey or not supervise him was not based on social, economic, or political policy. All of these decisions were merely "ad hoc decision[s] based on the situation confronting [the School]." *See Alake v. City of Boston,* 40 Mass.App.Ct. 610, 666 N.E.2d 1022, 1025 (1996) (chaperones su-

pervising school children not immune from suit). The School's actions were nothing more than the application of professional judgment to a given set of facts. Its conduct was not "entwined in a layer of policy-making that exceeded the mere application of rules to facts." *Oslin v. State,* 543 N.W.2d 408, 416 (Minn.Ct.App.1996). These ultimate decisions do not affect social, political, or economic policy any more than the decision itself is based on these considerations. *See Kansas State Bank & Trust Co.,* 819 P.2d at 600 (discretionary function must involve some sort of policy formulation when following the "nature and quality" test articulated in *Downs,* 522 F.2d at 990).

 The burden is on the School to prove its actions are entitled to the shield of discretionary function immunity. 18 *Municipal Corporations* § 53.04.20, 162 (3d ed.1993). The School did not offer and the district court did not articulate any policies at the heart of the School's decision to hire, retain, or supervise Lindsey. It has not even attempted to satisfy this burden with the exception of mere assertions that policy considerations were involved. The required demonstration is completely absent in this case. At the time the School made decisions regarding Lindsey's hiring, retention, and supervision, considerations were not immediately involved that directly related to the exercise of governmental policy judgments. *See Ex Parte Cranman,* 792 So.2d at 404. Rather, the School's actions were nothing more than a product of ordinary, day-to-day operations. The decisions the School made in hiring, retaining, and supervising Lindsey did not implicate policy formulation at any level. Given these facts, the School has not satisfied the second prong of the discretionary function immunity test. As such, the School does not enjoy

immunity from the Does' suit for negligent hiring, retention, and supervision.

 As a matter of public policy, surely, our legislature, in enacting Iowa Code section 670.4(3), did not intend to allow a school district to hire, retain, or leave unsupervised a teacher with known propensities for child abuse with total impunity. The School had an affirmative duty to take all reasonable steps to protect its students. *See Rodriguez v. Inglewood Unified Sch. Dist.,* 186 Cal.App.3d 707, 715, 230 Cal.Rptr. 823 (1986). In protecting its children, a school must exercise the same care toward them "as a parent of ordinary prudence would observe in comparable circumstances." *City of Cedar Falls,* 617 N.W.2d at 18.

> Teaching and learning cannot take place without the physical and mental well-being of the students. The school premises, in short, must be safe and welcoming. . . . The public school setting is one in which governmental officials are directly in charge of children and their environs. . . . Further, the responsibility of school officials for each of their charges, the children, is heightened as compared to the responsibility of the police for the public in general.

*Virginia G. v. ABC Unified Schl Dist.,* 15 Cal.App.4th 1848, 1854, 19 Cal.Rptr.2d 671 (1993). Based upon this special relationship between a school and its students, claims against a school district based on its own negligence may be pursued. *Id.* at 1855, 19 Cal.Rptr.2d 671 (claims against a school district for negligent hiring and supervision are permitted). The negligence claim before us is no different from the judgments

> of private individuals which are reviewed every day through the mechanism of an action in tort. Personal injury from . . . the negligence of those into whose care [children] are entrusted is not a risk

that school children should, as [a] matter of public policy, be required to run in return for the benefit of a public education.

*Alake,* 666 N.E.2d at 1025 (citation omitted). Applying traditional tort principles, the courts are perfectly capable of adjudicating the reasonableness of hiring, retaining, and supervising a particular teacher. Because the discretionary function immunity does not apply, summary judgment should not have been granted.

### IV. Conclusion

We conclude the discretionary function immunity does not apply to a school district for the acts of hiring, retaining, and supervising an individual employee. Summary judgment on this issue should not have been granted. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except CARTER, J., takes no part.