Cheryl MESSERSCHMIDT and Kelvin Messerschmidt, Appellees,

v.

CITY OF SIOUX CITY, Appellant.

City of Sioux City, Iowa, Third–Party Plaintiff,

v.

Sisangviane Mekdara, Third–Party Defendant.

No. 01–1209.

Supreme Court of Iowa.

Nov. 14, 2002.

Rehearing Denied Jan. 3, 2003.

Ivan T. Webber, Andrew J. Bracken, Danielle J. Jess, and James R. Wainwright of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellant.

Edward J. Keane, Sioux City, for appellees.

STREIT, Justice.

While volunteering at the Big Parade celebration in Sioux City, Cheryl Messerschmidt was seriously injured when a drunk driver plowed into the golf cart in which she was seated. Before the accident, a Big Parade worker made the decision to remove the road barricade which prevented cars from moving in this area during the celebration. Messerschmidt sued the city for her injuries. The city argues it is immune under three theories. The city also argues there was not substantial evidence to support the jury's apportionment of fault. Messerschmidts cross-appeal arguing the trial court erred in allowing the city to amend its answer after the close of plaintiff's case in chief. Because we find the city is not immune from liability under the facts of this case, we affirm both on the appeal and on the cross-appeal.

## I. Background and Facts

In July 1999, Cheryl Messerschmidt was working for a community celebration in Sioux City known as the "Big Parade." The Big Parade is an event the city holds together with its sister city, Lake Charles, Louisiana. Big Parade sponsors and vendors pay into the city budget. Approximately ten thousand people participate in the Big Parade. A Sioux City employee was in charge of running the Big Parade. The city contracted with vendors to provide various services during the Big Parade. As part of this event, Sioux City police officers were paid to help provide security. At the city's request, the Woodbury County Sheriff's Reserve unit also assisted in providing security and crowd control. The sheriff's reserve unit was to report to and follow any orders given by Martin Pottebaum, the member of the event committee in charge of security and safety for the Big Parade.

During the event, the city provided barricades to block off a frontage road near the riverfront. The barricade was to be in place until people were off the riverfront road. However, following the evening parade and fireworks, but before the area was clear, the city removed the barricades blocking access to the riverfront road. Martin Pottebaum gave the order to the sheriff's reserve unit to lift the barricade. Pottebaum does not recall giving this order though other testimony suggests he did. Pottebaum conceded the barricades should not have been lifted when they were. When the barricades were removed, there were still between 1,500 and 2,000 people in the area. Shortly after the sheriff reserve officers took the barricade down, Sisangviane Mekdara, an underage

drunken driver, drove his car down the frontage road and hit the golf cart in which Messerschmidt was seated. Messerschmidt was thrown from the golf cart and injured. She and her husband sued the city claiming the city removed the barricades too soon after the fireworks. The city, in turn, sued Mekdara as a third-party defendant and Mekdara defaulted.

In its amended answer, the city claimed it is immune from suit under the discretionary function immunity exception of Iowa Code section 670.4(3) (1999). At the close of Messerschmidts' case, the court allowed the city to add an immunity defense based on Iowa Code section 670.4(10) (damages caused by a third party not under the supervision of the city). The court denied the city's motion for a directed verdict. The jury apportioned eighty-five percent fault to the city and fifteen percent fault to Mekdara. The jury returned a million-dollar verdict for Messerschmidt and her husband. The city appeals and Messerschmidts cross-appeal.

On appeal, the city argues: 1) under its discretionary function it is immune from liability under Iowa Code section 670.4(3); 2) it could not be assigned a percentage of fault for Mekdara's fault under Iowa Code section 668.10(1); and 3) it was immune from liability for placement of the barricade under Iowa Code section 670.4(10). The city also contends the jury's apportionment of fault was manifestly erroneous and not supported by substantial evidence. Messerschmidts argue the district court abused its discretion in allowing the city to belatedly amend its answer to add the section 670.4(10) immunity defense. They also argue the city did not preserve error on its section 668.10(1) immunity.

## II. The Merits

On appeal we must consider whether the discretionary function immunity applies in this case to shield the city from liability for its action in removing the barricade. We also must determine whether the trial court properly sustained the jury's verdict that the city was predominantly at fault. Finally, we must determine whether the trial court abused its discretion in allowing the city to belatedly amend its answer to add the section 670.4(10) immunity defense.

## A. Discretionary Function Immunity Under Iowa Code Section 670.4(3)

We are called upon to determine whether the actions of the city in removing the barricade to allow frontage road access was a decision entitled to immunity. Our review of this issue is for correction of errors at law. *Pinkerton v. Jeld–Wen, Inc.,* 588 N.W.2d 679, 680 (Iowa 1998). We recently addressed the discretionary function immunity in *Doe v. Cedar Rapids Community School District,* 652 N.W.2d 439 (Iowa 2002). We articulated the appropriate test for determining whether a governmental action is immune from liability. First, we determine whether the challenged conduct was a matter of choice for the acting government employee. *Id.* at 443 (citing *Goodman v. City of LeClaire,* 587 N.W.2d 232, 237–38 (Iowa 1998)). Then, if we conclude the challenged conduct was the product of judgment, we must determine whether the judgment is of the kind the legislature intended to shield from liability when it enacted Iowa Code section 670.4(3). In applying this two-step test, the district court found the discretionary function immunity does not apply because Pottebaum's decision to remove the barricades was not the product of choice. We now turn to the first prong of this test.

The first factor to examine is whether an element of judgment or discretion was involved in the city's decision to remove the barricade. Though Messer-

schmidts contend there was no choice involved, we disagree. Just as we recently found choice existed at the heart of a school district's decision to hire, retain, and supervise a particular teacher, here we find the city exercised choice in its decision to take the barricade down. *Doe*, 652 N.W.2d at 444. Messerschmidts argue the city is liable because, when it removed the barricade, it failed to comply with a previously adopted policy. There is no evidence to suggest the city had a policy stating the barricade was to be removed only when all people were gone from the premises. At best, there was evidence of a consensus of the Big Parade workers that the barricades would stay in place until all of the festival activities had ended. In years past, the barricades were not removed until the very end of the event when no people were left. Evidence of this custom and usage alone does not constitute a policy on the issue. When the parade worker decided it was time to take the barricade down, he exercised choice based on judgment. The first prong of the test is satisfied.

■ We now must determine whether the particular challenged choice is of the type the legislature intended to insulate from liability. If the city's action involved a "high degree of discretion and judgment ... in weighing alternatives and making choices with respect to public policy and planning," the city should be immune from liability. *Id.* (citing *Hacking v. Town of Belmont*, 143 N.H. 546, 736 A.2d 1229, 1232 (1999)). We consider whether the challenged action involved policy-making decisions and significant judgment or merely the performance of routine duties.

■ The city has not met its burden to prove considerations based on social, economic, or political policy were involved in its decision to take the barricade down. We do not question or test the wisdom of the city's action, but rather the nature of

the decision itself and the process used to reach it. *See State v. Livengood by Livengood*, 688 N.E.2d 189, 196 (Ind.Ct.App. 1997). Only those decisions based on political, social, or economic policy considerations which cannot be assessed by customary tort standards are immune. *Doe*, 652 N.W.2d at 443. The city's action in removing this particular barricade did not involve legislative or administrative decisions.

The decision to block a particular road was made in the interests of the safety of the people at the Big Parade. This is not comparable to a government decision to open a new road or highway. When a city decides whether to build a road, open a new street, or install highway guardrails, it may consider various social, economic, and political policies. For instance, the city may weigh competing needs of pedestrian safety, engineering concerns, commerce, traffic flow, and limited financial resources. *See, e.g., Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 261 (Alaska 2000) (decision whether to install highway guardrails is immune); *Dep't of Transp. v. Brown*, 267 Ga. 6, 471 S.E.2d 849, 851 (1996) (decision whether to build a road is immune, whereas decision to open an intersection and whether to open it without traffic lights is not immune); *Metier v. Cooper Transp. Co.*, 378 N.W.2d 907, 910 (Iowa 1985) (decision to keep highway open during construction was immune, but once decision was made, negligence in carrying out the decision was not protected from liability); *Butler v. State*, 336 N.W.2d 416, 419–20 (Iowa 1983) (decisions as to when and where to construct a new freeway are immune); *Baker v. Seal*, 694 S.W.2d 948, 950 (Tenn.Ct.App.1984) (decision whether to construct a road is immune from liability). Similarly, the city's removal of this particular barricade is not analogous to a city's decision to adopt highway safety standards that involved a deliberate as-

sessment of the state's priorities. *See Livengood by Livengood,* 688 N.E.2d at 196 (adoption of highway safety standards implicates the type of policy-oriented deliberation process discretionary function immunity is designed to protect). The city does not assert any such policies were at the heart of its decision to take the barricade down.

There is no evidence that anyone of authority weighed any social, economic, or political policies before lifting the barricade. The record indicates Pottebaum's decision was nothing more than an ad hoc decision, tailored only for the particular facts as presented the night of the Big Parade. Matters such as when to lift a temporary road barricade do not require evaluation of policies but instead involved implementation of everyday decisions routinely made by the city. The city undertook to provide safe conditions for the festival-goers. In doing so, the city had a duty to use due care in providing safety and crowd control. Resolution of questions such as whether or not the city properly removed the barricade when there were still over 1,500 people in the area relates to its duty of care to the Big Parade visitors. Such an a matter presents issues of fact that courts are equipped to evaluate under traditional principles of negligence. Because the city has not articulated any economic, political, or social policy concerns central to its actions, it has not met its burden to show the discretionary function immunity applies. We find the district court correctly found the city is not immune from liability for its actions in this case. We affirm.

### B. Iowa Code Section 668.10(1) Immunity for Traffic Control Devices

■ The city also contends it is immune from liability under Iowa Code section 668.10(1). This section provides a government entity cannot be assigned any percentage of fault for failing to "place, erect, or install a stop sign, traffic control device, or other regulatory sign as defined in the uniform manual for traffic control devices adopted pursuant to section 321.252." However, when a regulatory device has been set up "the state or municipality may be assigned a percentage of fault for its failure to maintain the device." *Id.* The city did not argue this defense below. The trial court did not have an opportunity to rule on this issue. As such, we find the city has not preserved error for our review of this claim.[1]

### C. Immunity Under Iowa Code Section 670.4(10) for Third-party Fault

■ Finally, the city argues it cannot be held liable for Messerschmidt's injuries when it was the drunken driver, not the city, who drove a car into Messerschmidt injuring her. The city filed a motion for a new trial with the trial court arguing the court erred in denying the city's request for an instruction on immunity under Iowa Code section 670.4(10). This section provides for immunity from,

[a]ny claim based upon an act or omission of an officer or employee of the municipality, whether by issuance of permit, inspection, investigation, or otherwise ... if the damage was caused by

---

1. The city attempts to dodge this conclusion arguing the issue is a matter of subject matter jurisdiction and may be raised at any time. The city's claim is wholly without merit. Immunity defenses are not jurisdictional, but may be reviewed on the merits. *Hawkeye*

*Bank v. State,* 515 N.W.2d 348, 351 (Iowa 1994). Under Iowa Code section 670.4, a city may establish immunity from liability. The court may preside over cases where liability is an issue. *See id.*

a third party, event, or property not under the supervision or control of the municipality, unless the act or omission of the officer or employee constitutes actual malice or a criminal offense.

Iowa Code § 670.4(10). The city argued Messerschmidt's injuries were caused by a third party, event, or property not under the city's supervision or control. The court ruled that whatever negligence may be attributable to the drunken driver is not a superseding or intervening cause of the injury, but rather is a part of the totality of the circumstances leading to Messerschmidt's injuries. We must consider whether the city can find shelter from liability under Iowa Code section 670.4(10).

Whether this section is applicable to the case before us presents a question of law appropriate for determination by the trial court. The city's reliance on section 670.4(10) immunity is misplaced. This section provides a municipality is immune from liability for "[a]ny claim based upon an act or omission of an officer or employee of the municipality, *whether by issuance of permit, inspection, investigation, or otherwise* ...." Iowa Code § 670.4(10) (emphasis added). Messerschmidts claim the city "was negligent in removing the barricades, security officers, and law enforcement vehicles and in reopening the frontage road to motor vehicle traffic." Messerschmidts do not allege the city is liable for its actions in conducting an investigation or inspection or through issuing a permit. We must determine whether the city's action in removing the barricade is the type of action that falls within the meaning of the word "otherwise" as it is used in this statute.

■ The doctrine of *ejusdem generis* is instructive. Under this doctrine, when specific words are used in a statute followed by general words, the general words are restricted to include only ob-

jects similar to those specified. *Shatzer v. Globe Am. Cas. Co.,* 639 N.W.2d 1, 5 (Iowa 2001). Here, the specific words are "issuance of permit," "inspection," and "investigation." These words contemplate actions by the city such as the inspection of buildings and elevators, food inspection, and issuance of permits. *See, e.g., Williams v. Bayers,* 452 N.W.2d 624, 626 (Iowa Ct. App.1990) (where plaintiff injured in a building in which city conducted inspections and issued permits, municipality not liable under Iowa Code section 613A.4(10) (renumbered Iowa Code § 670.4(10)) because these actions did not constitute supervision or control over the premises). The words "issuance of permit," "investigation," and "inspection" are followed by the more generic phrase, "or otherwise."

The term "otherwise" is not so broad as to include every municipality action or omission. Pursuant to the doctrine of *ejusdem generis,* "otherwise" is intended to define the preceding terms with some flexibility. This flexibility is intended to accommodate for similar municipality actions not within the express contemplation of the legislature when it enacted this immunity provision. "Otherwise" includes only those actions of a municipality similar to an inspection, investigation, or issuance of a permit. Here, the city did not inspect, investigate, or issue a permit. The city's actions in removing the barricade are not remotely similar to the actions contemplated by section 670.4(10). In this case, it cannot be said the statute contemplates the city's removal of a barricade as coming within the protective ambit of section 670.4(10) immunity.

Messerschmidts claim the city's negligence in removing the barricade was a proximate cause of Cheryl's injuries. Because the city did not conduct an investigation or inspection or issue a permit, section 670.4(10) does not apply to this case. In

the court's ruling on the city's motion for a new trial, the court properly found it did not err in refusing to instruct the jury on immunity premised upon Iowa Code section 670.4(10).

The city amended its original answer arguing this immunity after the close of Messerschmidts' case in chief. Because section 670.4(10) immunity does not protect the city from liability, we do not reach Messerschmidts' objection to the trial court's allowance of this late amendment and the trial court is affirmed as to this ruling.

### D. Apportionment of Fault and Verdict

■ The jury found the city eighty-five percent at fault and Mekdara fifteen-percent liable. In the city's motion for a new trial, it argued the verdict was not sustained by sufficient evidence. The court ruled questions of negligence, contributory negligence, and proximate cause are questions for the jury. *See* Iowa R.App. P. 6.14(6)(j). The court found sufficient facts upon which to uphold the jury's verdict and apportionment of fault.

The jury's determination of fault was a question of fact appropriate for resolution by the jury. *See Morgan v. Perlowski,* 508 N.W.2d 724, 728 (Iowa 1993). There was substantial evidence upon which the jury could have found the city was in part at fault for Cheryl's injuries. The facts relevant to this issue are as follows.

The city held and sponsored the Big Parade on city property. Pottebaum had been drinking while he was in charge of safety and security at the Big Parade. Though he testified he did not drink when he was "actually working," in fact, Pottebaum had about four beers before ordering the barricade to be taken down. Control of safety and security did not shift during the night from Pottebaum to any other city employee. Pottebaum admitted he was in a hurry to attend a Cajun party after the fireworks. The accident occurred shortly after the city removed the barricade. Witnesses testified Mekdara was in control of the car and was not weaving. After the accident, Pottebaum admitted the barricade should not have been removed. He also acknowledged that when the city removed the barricade, other workers in golf carts were put in danger because the carts did not have reflectors on them.

The record also supports the conclusion that a sober driver could have hit Messerschmidt under the same condition as did the drunken driver. Witnesses testified the golf carts had no lights or reflective material on them. Though there are a few street lights on the road where Messerschmidt was injured, testimony reveals the area of the accident was not well-lit. The road Messerschmidt was injured on is a busy road. While the barriers remained in place, the traffic flow was consistent with approximately eight cars every fifteen minutes approaching the barriers trying to get down the road. No other cars had passed through the area between the time the barricade was removed and when the drunk driver hit Messerschmidt. There were no other warning signs that Big Parade visitors were still in the area and drivers should approach with caution.

Given these facts, we conclude there was substantial evidence upon which the jury could apportion fault between the city and the drunken driver finding the city was negligent and its negligence was a proximate cause of Cheryl's injuries. Because substantial evidence exists to support the jury's finding of fault, the court properly upheld the jury's apportionment of fault. *See Cook v. State,* 431 N.W.2d 800, 807 (Iowa 1988) (court must determine whether substantial evidence exists to support jury's apportionment of fault); *see also Fox v. Interstate Power Co.,* 521 N.W.2d

762, 764 (Iowa Ct.App.1994) (court cannot substitute is judgment for that of the jury). We affirm.

### III. Conclusion

The city is not immune from liability for its actions in removing this particular barricade during the Big Parade. The decision did not involve social, political, or economic policies the discretionary function immunity is designed to protect. Because the city is not immune from liability under Iowa Code section 670.4(10), we do not address Messerschmidts' objection to the city's late amendment adding this defense. Substantial evidence in the record supports the jury's conclusion that the city was liable in part for Cheryl's injuries.

**AFFIRMED ON APPEAL AND CROSS–APPEAL.**