Patti L. SCHMITZ, Appellant,

v.

CITY OF DUBUQUE, Appellee.

No. 02–1893.

Supreme Court of Iowa.

June 16, 2004.

James G. Sawtelle and James W. Steinberg of Duncan, Green, Brown, Langeness & Eckley, P.C., Des Moines, and Todd J. Locher of Locher & Locher, Farley, for appellant.

Les V. Reddick of Kane, Norby & Reddick, P.C., Dubuque, for appellee.

LARSON, Justice.

The plaintiff, Patti Schmitz, was injured when the front wheel of her bicycle caught the edge of an asphalt overlay on a bicycle/walking trail in Dubuque. She sued the city, but the district court dismissed her case on the ground the city was immune from suit under Iowa Code section 670.4 (1997). The court of appeals affirmed, and we granted further review. We vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.

## I. Facts and Prior Proceedings.

Schmitz and three others were bicycling on a six-foot-wide asphalt trail in Dubuque when they met two joggers coming toward them. Schmitz steered her bike off the trail to make way for the joggers. When she attempted to get back on the trail, she snagged her front wheel on the edge of the asphalt overlay. She fell to the ground and sustained serious ankle injuries.

Schmitz sued the city, alleging negligence in several respects, primarily with respect to the design, construction, and maintenance of the trail. The trail was built in 1973 or 1974 on the crest of an Army Corps of Engineers flood wall adjoining the Mississippi River in Dubuque. The trail was surfaced with asphalt. The surface began to deteriorate, and in 1991 the city overlaid it with another layer of asphalt. The adjoining shoulders were not raised, however, resulting in the trail surface being approximately one and one-half inches higher than the shoulders—just enough to create a problem with the front wheel of a bicycle. Although the plaintiff alleges negligence with respect to the city's failure to restrict usage of the trail to prevent competing uses such as jogging and biking and failing to properly "sign" the trail, her main argument concerns the city's failure to eliminate the drop-off between the trail and the shoulders.

An organization called the American Association of State Highway and Transportation Officials (AASHTO) has promulgated standards for construction of such trails that would discourage construction with a drop-off such as found on the Dubuque trail. However, these standards were not published at the time the trail was originally built. The standards, however, were in effect in 1991, when the asphalt overlay was added. The plaintiff contends the 1991 overlay was responsible for her accident, that the drop-off between the new surface on the trail and shoulders violated the AASHTO standards, and this is sufficient to establish the city's negligence.

On appeal the city does not challenge the application of the AASHTO standards; in fact, its argument is based solely on its claim that irrespective of any negligence, it cannot be held liable because the acts complained of by the plaintiff were discretionary functions entitling the city to immunity under Iowa Code section 670.4.

Because the basis for the decisions of the district court and the court of appeals, as well as the city's argument on appeal, is limited to the immunity issue, we limit our discussion accordingly. We consider the decisions of the city with respect to con-

struction of the trail and the overlay only as they bear on their exercise of a discretionary function—not as they bear on any claims of negligence.

## II. *The Immunity Statute.*

Iowa Code section 670.4 provides this with respect to liability of governmental subdivisions, including cities:

> The liability imposed by [Iowa Code] section 670.2 shall have no application to any claim enumerated in this section. As to any such claim, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability [for:]
>
> . . . .
>
> 3. Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function* or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

(Emphasis added.)

## III. *Our Cases.*

We have discussed discretionary-function immunity in several recent cases, which track the development of our law from our adoption in *Stanley v. State*, 197 N.W.2d 599, 602–04 (Iowa 1972), of immunity based on the "planning/operational" analysis of *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), through more recent cases advocating a test based on *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). *See Goodman v. City of Le Claire*, 587 N.W.2d 232, 238–39 (Iowa 1998) (rejecting our prior planning/operational test in favor of the *Berkovitz* test).

The Supreme Court in *Berkovitz* explained its two-step analysis in assessing discretionary-function immunity under the Federal Tort Claims Act: First,

> [i]n examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice.

*Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958–59, 100 L.Ed.2d at 540–41 (citation omitted).

> Second,
>
> a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield. The basis for the discretionary function exception was Congress' desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy.

*Id.* at 536–37, 108 S.Ct. at 1959, 100 L.Ed.2d at 541 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660, 674–75 (1984)).

We applied the *Berkovitz* test in *Shelton v. State*, 644 N.W.2d 27 (Iowa 2002), a case heavily relied on by the district court, the court of appeals, and the City of Dubuque, because, as a case arising out of a hiking injury in a state park, it is closely analo-

gous on its facts. (We held in *Shelton* that the state's maintenance of a hiking trail was a discretionary function under the analogous state tort claims act, Iowa Code § 669.14. *Shelton,* 644 N.W.2d at 31). This plaintiff, however, contends *Shelton* is distinguishable because the state tort claims act provides a broader discretionary-function immunity than the one involved in this case under the Municipal Tort Claims Act.

We reject both the city's reliance on *Shelton* and the basis for the plaintiff's distinguishing *Shelton.* The city relies on *Shelton* because of the similarity in the facts underlying the incident; both cases involved falls from public trails. However, under *Goodman* and the cases following it, the circumstances underlying the public entity's decision, and not the facts surrounding the injury itself, is the key to immunity. We also reject the plaintiff's argument that *Shelton* must be distinguished on the basis of different language in the Municipal Tort Claims Act as compared to the state tort claims act considered in *Shelton.* We reject this argument; for our purposes the statutes are effectively identical.

### IV. *Application of the Two–Part Test.*

■ We begin with the observation that the city has the burden to establish its immunity. *Doe v. Cedar Rapids Cmty. Sch. Dist.,* 652 N.W.2d 439, 446 (Iowa 2002); *Hawkeye Bank v. State,* 515 N.W.2d 348, 351 (Iowa 1994) (holding discretionary-function argument is defense to be raised by the defendant; it is not jurisdictional).

■ Also, the mere exercise of judgment is not sufficient to establish discretionary-function immunity because some form of judgment is exercised in virtually all human endeavors. *See Downs v. Unit-*

*ed States,* 522 F.2d 990, 995 (6th Cir.1975) (interpreting Federal Tort Claims Act).

It is not the mere exercise of judgment, however, which immunizes the United States from liability for the torts of its employees. Driving an automobile was frequently cited in the congressional reports leading to the Act as an example of "non-discretionary" activity which would be outside the discretionary function exception. Driving an automobile involves judgment. The failure to signal a turn, for example, may be said to represent an exercise of judgment, albeit a poor one. Yet, the automobile accident caused by a federal employee while on the job is an archetypal claim which Congress sought to place in the courts.

*Id.* (citation omitted) (footnote omitted); *accord Stanley,* 197 N.W.2d at 603. Because the wording of the discretionary-function immunity in the federal and state statutes is identical, we look to federal, as well as Iowa, cases. *See Butler v. State,* 336 N.W.2d 416, 419 (Iowa 1983).

*Downs* provides this perspective on the discretionary-function immunity under the Federal Tort Claims Act:

The functions which [the] sparse legislative history [of the federal act] indicates were to be [immunized] are those involving policy formulation, as distinguished from the day-to-day activities of persons not engaged in determining the general nature of the Government's business.

522 F.2d at 996. We have said that

the primary factor in determining whether a particular activity qualifies as a discretionary function is whether the decision to act involves the evaluation of broad policy factors. If so, the decision is more likely to be characterized as a discretionary function.

*Keystone Elec. Mfg., Co. v. City of Des Moines,* 586 N.W.2d 340, 348 (Iowa 1998)

(citing *Julius Rothschild & Co. v. State,* 66 Haw. 76, 80, 655 P.2d 877, 880–81 (Haw. 1982)).

Our cases have held that liability under tort claims acts is the rule and immunity is the exception. *See Graber v. City of Ankeny,* 656 N.W.2d 157, 161 (Iowa 2003); *Doe,* 652 N.W.2d at 443. The United States Supreme Court has also shown a reluctance to broadly apply the federal discretionary-function immunity, stating:

> The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws. Of course, when dealing with a statute subjecting the Government to liability for potentially great sums of money, this Court must not promote profligacy by careless construction. Neither should it as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it.

*Indian Towing Co. v. United States,* 350 U.S. 61, 68–69, 76 S.Ct. 122, 126, 100 L.Ed. 48, 55–56 (1955).

The general rule is that,

> [b]efore immunity attaches there must be some form of considered decision, that is, one which consciously balances risks and advantages. The duty of a governmental entity is discretionary when it devolves upon the part of an officer to determine whether or not he should perform a certain act, and, if so, in what particular manner. Performance of a discretionary function requires exercise in judgment and choice and involves what is proper and just under the circumstances. A court must look at the particular conduct alleged in order to determine whether that conduct involved the exercise of discretion.

> Discretionary immunity is to be construed narrowly. The mere exercise of some judgment is not necessarily sufficient to invoke the discretionary function defense.

63 C.J.S. *Municipal Corporations* § 665, at 375–76 (1999) (footnotes omitted).

Our cases have required a defendant who seeks immunity to show that some form of considered judgment and choice were brought to bear on its decision. For example, we held in *Madden v. City of Eldridge,* 661 N.W.2d 134 (Iowa 2003), that discretionary-function immunity had not been established. That case involved a claim that the city failed to properly inspect an apartment building with respect to the installation of drywall, which dislodged and killed the plaintiff's decedent. The district court granted summary judgment against the plaintiff on two grounds, including discretionary-function immunity. We held this was error (although the case was affirmed on another ground) because

> [t]here is no evidence in the record to suggest the building inspector engaged in this type of public policy analysis [weighing advantages and disadvantages] before he decided not to inspect the lath and wallboards. No legitimate policy-making decisions involving significant judgment were involved. The record indicates the building inspector's action was nothing more than an ad hoc decision, tailored to the particular circumstances before him at the final inspection.

*Madden,* 661 N.W.2d at 140 (citing *Doe,* 652 N.W.2d at 445).

In *Messerschmidt v. City of Sioux City,* 654 N.W.2d 879 (Iowa 2002), we held the defense was not established because the city failed to establish the second element of the *Berkovitz* test. In *Messerschmidt* a

volunteer worker at a Sioux City parade was injured when a city worker removed a traffic control barricade, allowing a drunk driver to strike and injure the plaintiff. We rejected the city's immunity claim because it

> ha[d] not met its burden to prove considerations based on social, economic, or political policy were involved in its decision to take the barricade down. We do not question or test the wisdom of the city's action, but rather the nature of the decision itself and the process used to reach it. Only those decisions based on political, social, or economic policy considerations which cannot be assessed by customary tort standards are immune. The city's action in removing this particular barricade did not involve legislative or administrative decisions.

*Messerschmidt*, 654 N.W.2d at 882 (citations omitted).

In *Doe*, 652 N.W.2d 439, a school district was sued by parents of students who, the plaintiffs claimed, were the subjects of improper sexual conduct by a teacher. The plaintiffs' suit was based on negligent hiring, retention, and supervision of the teacher. The school district claimed immunity on the basis the alleged actions of the district were discretionary functions. We held the district failed to establish immunity because, while

> [i]t is possible ... to articulate some notion of policy considerations involved in any decision[,] ... [o]nly decisions grounded in economic, political, or social policy considerations are exempt from liability.

*Doe*, 652 N.W.2d at 445. We concluded:

> Under the present facts, the School received an application, reviewed it, presumably interviewed [the teacher] and decided whether or not to hire him. Once on staff, the School's decision to renew his contract did not involve policy

considerations. Finally, the School's choice to either supervise [the teacher] or not supervise him was not based on social, economic, or political policy. All of these decisions were merely "ad hoc decision[s] based on the situation confronting [the School]."

*Id.* (quoting *Alake v. City of Boston*, 40 Mass.App.Ct. 610, 614, 666 N.E.2d 1022, 1025 (1996)).

■ An example of the kind of decision that may be the basis of discretionary-function immunity is found in *Shelton* which, like the present case, involved allegedly defective design and maintenance of a publicly owned trail. The plaintiff in *Shelton* claimed the state was negligent in locating the trail from which the plaintiff fell, failing to maintain the trail, and failing to place guardrails or warning signs along the trail. We applied the *Berkovitz* two-step analysis and concluded the first step, whether the action involved a matter of choice on the part of the actor, was established. *Shelton*, 644 N.W.2d at 30. We held that the second part of the test, whether the action choices were of the sort intended for protection under discretionary-function immunity, was also satisfied. One of the concerns of state officials in *Shelton* was the preservation of the pristine character of the Wildcat Den State Park in Muscatine County. We held the state's decision to preserve these characteristics of the park at the expense of the safety measures suggested by the plaintiff, was entitled to discretionary-function immunity, stating:

> We think the choices challenged here are the archetype of the sort intended for protection. The basis for the exception is well known. It is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in

tort." The substances used in forming the trails, the placement of the trails, the omission of guards or handrails, placement or omission of warning signs, and trail maintenance, were all matters for park professionals. These administrative choices, driven as they were by economics and aesthetics, are clearly matters into which courts in general and judges in particular are ill equipped to intrude.

*Id.* (quoting *Goodman,* 587 N.W.2d at 237). Despite the similarity of the circumstances in *Shelton* and the present case, i.e., injuries from use of public trails, the cases are substantially different in the application of the test for discretionary-function immunity. In the present case, as in *Shelton,* the first element of the test (whether the action involved a matter of choice by the government action) has been satisfied. As to the second part of the test, i.e., whether the choices at issue were of the sort intended for protection under discretionary-function immunity, the city's proof falls short. In fact, the city produced no evidence that the choice it made with respect to whether the overlay should be done with or without grading of the accompanying shoulders was the sort of decision that the discretionary function immunity intends to protect, i.e., a decision weighing "social, economic, or political policies." *See Graber,* 656 N.W.2d at 165.

Although the trail adjoined the scenic Mississippi River, no evidence was proffered to show that the decision might reasonably have been prompted by aesthetics. In fact, it is hard to imagine that shoulders one and one-half inches higher than the present shoulders would impact on the aesthetics at all. The city engineer testified that the AASHTO guidelines were in effect at the time the asphalt overlap was placed on the trail in 1991 and that the overlay did not comply with those standards. One solution, he testified, would

have been to add fill along the trail to bring the shoulders up to the level of the trail itself. This would be "relatively easy" to do, he testified, but "the gravel that would have been placed would no doubt, through erosion, wash down the sides. *That may have played into the factor of not creating a shoulder, but that's speculation."* (Emphasis added.)

■ We may assume that cost would be a factor in the city's decision to add the overlay without raising the shoulders or grinding off the old asphalt. However, we do not believe cost alone can satisfy the showing of social, economic, or social policy at the heart of discretionary-function immunity. If the rule were otherwise, virtually every case would qualify for immunity. In any event, the city engineer's opinion on the reason for not adding fill to the shoulder was "speculation."

We believe the city has failed to carry its burden of showing the necessary discretionary basis for the decisions it made. Accordingly, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for proceedings on the merits of the plaintiff's claims without consideration of the city's claim of immunity. The district court shall base its decision on the record already made.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.**