# IN THE COURT OF APPEALS OF IOWA

No. 14-1165
Filed October 14, 2015

**MARY MORRIS,**
        Applicant-Appellee,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.

        The State appeals from a district court ruling awarding Mary Morris damages. **AFFIRMED.**

        Thomas J. Miller, Attorney General, William A. Hill, Special Litigation Division, Assistant Attorney General, for appellant State.

        Ward A. Rouse of Rouse Law PC, West Des Moines, and Van M. Plumb, Des Moines, for appellee.

        Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

Bobby Morris was serving a life sentence at the Iowa State Penitentiary when he attempted to murder his wife Mary Morris during a prison visit. Mary sued the State for negligently operating the visiting room. Following a bench trial, the district court awarded her damages of $174,000.

On appeal, the State argues "the trial court erred in determining [it] negligently supervised the visiting room at the Iowa State Penitentiary." The State raises a three-pronged attack on the trial court decision: (1) it was entitled to "discretionary function" immunity under Iowa Code section 669.14(1) (2009); (2) the negligence claim was "barred by the public duty doctrine; and (3) "the claim should [have been] denied as Mary did not anticipate or believe that she would be assaulted prior to the visit."

### (1) Discretionary Function Immunity

The State is immune from tort liability for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused." Iowa Code § 669.14(1). Assuming without deciding that the discretionary-function question was preserved for our review,[1] we are persuaded it is inapplicable.

In *Walker v. State*, 801 N.W.2d 548, 554-55 (Iowa 2011), the Iowa Supreme Court concluded the exception did not insulate the State from suit by an inmate who was assaulted by another inmate. The court reasoned, "the

---

[1] In its ruling on the State's judgment notwithstanding the verdict, the district court stated it "did not reach the discretionary function issue."

decisions by prison staff in the supervision of the inmates did not involve the evaluation of broad public policy factors." *Walker*, 801 N.W.2d at 561. The decisions made, the court said, "were ad hoc decisions" and there was "nothing in the record to suggest that in performing their duties, the correctional staff could have weighed competing ideals in order to determine how to supervise the inmates." *Id.* at 563.

The same is true here. At the time of the assault, one of the officers was providing inmates "dress out" clothing to wear during their visits and the other was assigned to observe the video monitors from within an enclosed area adjacent to the visiting room. These duties implicated no broad public policy factors. *See Doe v. Cedar Rapids Cmty. Sch. Dist.*, 652 N.W.2d 439, 445 (Iowa 2002) ("Only decisions grounded in economic, political, or social policy considerations are exempt from liability.").

### (2) Public Duty Doctrine

The State claims "if a duty is owed to the public generally, there is no liability to an individual member of that group." *See Kolbe v. State*, 625 N.W.2d 721, 729 (Iowa 2001) (ruling State owed no duty to plaintiff bicyclist when it issued a driver's license to third party whose vehicle struck plaintiff). This is known as the public duty doctrine.

In *Raas v. State*, 729 N.W.2d 444, 449-50 (Iowa 2007), the court recognized the public duty doctrine was still viable following the enactment of the State Tort Claims Act. However, the court declined to apply it under circumstances virtually identical to this case. There, a visitor in the parking lot of a prison facility was attacked by an escaped inmate. *Raas*, 729 N.W.2d at 448-

49. Citing precedent finding a special relationship between a State hospital patient and the treating State physician, the court reaffirmed a State duty to protect "reasonably foreseeable" victims from injury inflicted by escaped inmates. *Id.* at 449-50.

As in *Raas*, Mary was not a member of the public at large; she was a prison visitor. This status afforded her a special relationship with the State, triggering a State duty to control the prisoner's conduct. The duty owed to her was arguably greater than the duty recognized in *Raas* because she was inside the walls of the penitentiary in a designated visiting area. The public duty doctrine was in applicable.

### (3) Foreseeability

The State asserts Mary Morris failed to foresee any danger from her visit and, accordingly, prison officials could not have "anticipated such violence or ha[ve] reason to suspect that an assault was likely to take place." As the district court stated, this argument "miss[es] the mark."

Our precedent does not require foreseeability by the victim but foreseeability by the State. *See Raas*, 729 N.W.2d at 450 ("[T]he State's duty to protect victims from injury inflicted by escaped patients or prisoners extends only to those persons who are reasonably foreseeable as victims."). "The assessment of the foreseeability of a risk is allocated . . . to the fact finder . . . ." *Thompson v. Kaczinski*, 774 N.W.2d 829, 835 (Iowa 2009); *see also Raas*, 729 N.W.2d at 450 (finding sufficient facts alleged to withstand motion to dismiss).

The district court as fact finder made detailed findings, as follows:

> [T]he State, through the prison guards employed by the Department of Corrections, was negligent in supervising the visiting room at the ISP . . . . This is the State's highest security institution, with the most high-risk offenders. Inmate Bobby Morris was allowed to stand and move about the visiting room for approximately three and a half minutes prior to the assault. This violates visitation policy. . . . Bobby Morris also crossed the yellow line into the restricted area near the visitors' bathroom. He was in violation of the rules when he did this. The guards admitted he should not have done this. This behavior was unobserved by . . . the guard on duty at that time.
>
> Finally, a loud assault occurred in the visitors' bathroom. This lasted five to seven minutes. There was screaming and banging. Neither guard heard this commotion. The surveillance videos show a number of people in the visiting room looking toward the restroom area in reaction to the screams. [A woman] got up and tried to get the attention of a guard. She knocked on the windows of the guard stations. No guard responded. [One officer] was doing dress-out in the dress-out room. [The other officer] was supposed to be observing the visiting room at this time. He could not explain why he did not observe these events—except that he must have been distracted. Even if he could not hear the screams from inside his "bubble," he should have noticed the reaction of the inmates and visitors in the visiting room, and [the woman's] attempts to get a guard's attention. The length of time that no one was observing the visiting room—before the attack and during the attack—shows that the guard on duty failed to exercise ordinary care.

The State does not challenge the evidence underlying these fact findings. Under our existing law, the findings support the court's determination that the State failed to exercise ordinary care. We discern no error in the district court's conclusions. The judgment in favor of Mary Morris is affirmed.

**AFFIRMED.**